******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

CHELSEA CHAPMAN KIRWAN
*v.* LAURENCE KIRWAN
(AC 40008)
(AC 40047)

Sheldon, Prescott and Bear, Js.

*Syllabus*

The defendant appealed to this court from the judgments of the trial court dissolving his marriage to the plaintiff and ordering him to make a lump sum payment to her of $91,000 to satisfy a child support arrearage. The court had approved an agreement by the parties to enter into binding mediation/arbitration as to, inter alia, alimony and the division of marital property. The issue of child support was reserved to the court in accordance with the parties' agreement and as required by statute (§ 52-408). The arbitrator made several factual findings in her award, including a determination that the defendant's annual gross income was approximately $400,000 per year. The trial court rendered judgment dissolving the marriage and incorporated the arbitrator's award into the dissolution judgment. Thereafter, the court conducted an evidentiary hearing as to child support and found, inter alia, that the defendant's gross annual income was $560,637 for the purpose of calculating his child support obligation. The court ordered him to make weekly child support payments and credited him for having made certain postjudgment child support payments. Subsequently, the court denied a motion for contempt filed by the plaintiff as to the child support arrearage, but ordered the defendant to make the $91,000 lump sum payment. *Held*:

1. The defendant could not prevail on his claim that the trial court, in making its child support award, was bound by the arbitrator's finding that his gross annual income was $400,000 and, thus, that the court's finding of $560,637 was clearly erroneous: the arbitrator's finding of gross income, which was made in the context of determining alimony, was not entitled to preclusive effect in the court's adjudication of child support, as the provision in § 52-408 that excludes from arbitration issues related to child support is broad, the absence of qualifying language conveyed the legislature's intent to render inarbitrable all issues, legal and factual, that pertain to child support, and the defendant offered no analysis of § 52-408 in asserting that the arbitrator's finding should have been binding on the court in determining his child support obligation; moreover, even if the exclusionary provision of § 52-408 were not clear and unambiguous, this court's interpretation was consistent with extrinsic evidence of the legislature's intent, and it would be inconsistent with concerns for the best interests of children to permit issues related to child support to be resolved conclusively in arbitration, which is a nonjudicial forum outside the control of our courts, as that would constitute an impermissible delegation of judicial authority.

2. The trial court's finding that the defendant earned $400,000 in gross income from employment was not clearly erroneous; that court reasonably could have determined that the defendant's gross income from employment was at least $400,000, as the plaintiff, who had worked as the business administrator for the defendant's medical practice, testified that the defendant had income from the medical practice, from consulting for medical companies and from teaching, and the defendant disclosed on a credit application in connection with an automobile lease that his gross annual income from employment was $400,000.

3. The defendant's claim that the trial court improperly determined the amount of gross rental income that he received from property that was awarded to him was unavailing, as a sufficient evidentiary basis existed for the court's finding; although the court utilized a rental income chart that had not been admitted into evidence, the chart contained numbers that reflected those in the defendant's 2015 tax return, which had been admitted into evidence, the figures on the chart were easily verified by comparing them with those on the tax return, and the court properly omitted from its calculation two of the defendant's properties that had generated substantial losses, as those properties were sold prior to the

child support hearing and the defendant failed to explain why it would be improper for the court to consider only properties that would generate income in the future in calculating income on which to base his prospective child support obligations.

4. The defendant could not prevail on his claim that the trial court abused its discretion in calculating his gross income when it failed to take into account his payment of life insurance premiums; that court had no evidentiary basis from which to calculate a credit against the defendant's income for a life insurance policy to benefit the children, as he never provided the court with a breakdown of the premium payments for life insurance that he disclosed on his financial affidavits, and although he indicated on his financial affidavit a monthly personal expense for life insurance, he listed no details of the policies' beneficiaries or the premium payments per policy.

5. The trial court did not abuse its discretion in rendering its child support order, as the order was consistent with the criteria established by statute (§ 46b-84 [d]) and within the range between the minimum and maximum support amounts established by the child support guidelines, and because no deviation from the guidelines occurred, the court was not required to provide any additional explanation for its decision.

6. The defendant's claim that the trial court failed to credit the voluntary child support payments that he made during the child support proceedings was dismissed as moot: there was no practical relief that could be afforded to the defendant with respect to his claim that the court was obligated to subtract the amount of the voluntary payments from the amount of his arrearage, rather than providing him with credit for the voluntary payments by temporarily reducing his child support obligations, as the defendant had reduced his weekly child support obligation in accordance with the court's order and, thus, received full credit for his voluntary child support payments; moreover, even if the trial court abused its discretion in the manner in which it credited the voluntary payments, any decision by this court would be academic, as it would not alter the status quo, which was that the defendant received full credit for his voluntary payments.

7. The defendant could not prevail on his claim that the trial court improperly ordered him to pay a lump sum to satisfy the child support arrearage, rather than permitting him to satisfy that arrearage on a weekly basis, as contemplated by the child support arrearage guidelines; the defendant failed to demonstrate that the arrearage guidelines were applicable to the lump sum order or that the court abused its discretion in ordering a lump sum payment, as the arrearage guidelines and the applicable state regulation (§ 46b-215a-3a [a]) reflect that the determination of lump sum payments is subject to the discretion of the court, and the court articulated that it ordered the lump sum payment because the defendant had the ability to pay, given his income and other finances, including the court's release to him of $100,000, which had been held in escrow, to aid him in meeting his child support obligations.

8. The defendant's claim that the trial court should have dismissed, rather than denied, the plaintiff's motion for contempt was not reviewable, the defendant having failed to raise that claim before the trial court; although the defendant had asked the trial court to deny the motion because he had not violated any clear and unambiguous order pertaining to the child support arrearage, he never asked the court to strike or dismiss the motion on the basis of legal or factual insufficiencies, or on the ground that it did not comply with our rules of practice.

Argued May 30—officially released October 23, 2018*

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk, where the court, *Tindill, J.*, approved the agreement of the parties to enter into binding mediation/arbitration as to certain disputed matters; thereafter, the arbitrator issued an award and entered certain orders; subsequently, the arbitrator issued a clarification of the award; thereafter, the court granted the defendant's motion to confirm the arbitra-

tor's award, and rendered judgment incorporating the arbitrator's award and clarification, and dissolving the marriage and granting certain other relief; subsequently, the court issued certain orders; thereafter, the court denied the defendant's motion to reargue and denied in part the defendant's motion for clarification, and the defendant appealed to this court; subsequently, the court, *Tindill, J.*, denied the plaintiff's motion for contempt, and entered certain orders as to child support and attorney's fees, and the defendant filed a second appeal; thereafter, the court, *Tindill, J.*, issued an articulation of its decision; subsequently, this court consolidated the appeals. *Affirmed.*

*Alan Scott Pickel*, for the appellant (defendant).

*Joseph T. O'Connor*, for the appellee (plaintiff).

*Opinion*

PRESCOTT, J. In these consolidated appeals arising out of a marital dissolution action, we must determine, inter alia, whether an arbitrator's factual finding regarding the gross income of a party, which was made in the course of determining alimony and the equitable distribution of marital assets, is binding on the court with respect to its subsequent adjudication of child support, an issue that was statutorily and contractually excluded from the arbitration. We conclude that it was proper for the trial court to make its own independent findings regarding gross income, unfettered by the previous findings of the arbitrator.

The present appeals arose following the court's October 23, 2015 judgment dissolving the marriage of the plaintiff, Chelsea Chapman Kirwan, and the defendant, Laurence Kirwan. The judgment incorporated by reference a pendente lite arbitration award that had resolved most of the issues raised in the dissolution action, including alimony, the distribution of marital assets, and the enforceability of a premarital agreement. Both the parties' arbitration agreement and the arbitrator's award, however, expressly reserved for the Superior Court resolution of issues related to custody and child support.[1] Following an evidentiary hearing, the court, on December 7, 2016, issued child support orders, which, by agreement of the parties, were made retroactive to the date of the dissolution judgment. The defendant appeals from those child support orders (AC 40008). The defendant also appeals from a subsequent remedial order that the court issued in response to a motion for contempt and that required the defendant to make a $91,000 lump sum payment to the plaintiff to satisfy a child support arrearage resulting from the court's December 7, 2016 order making his child support obligation retroactive to October 23, 2015 (AC 40047).[2]

The defendant claims on appeal that the court improperly (1) failed to adhere to the arbitrator's factual findings regarding his gross income, as set forth in the arbitrator's award, despite the fact that the court incorporated the arbitrator's award by reference into the dissolution judgment; (2) found that his gross income from employment was $400,000; (3) calculated his gross rental income from property awarded to him as part of the division of marital assets; (4) failed to take into consideration his payments of premiums for life insurance policies for the benefit of his children;[3] (5) failed to explain why the plaintiff was entitled to support payments that exceeded the child support guidelines' minimum presumptive amount; (6) gave prospective credit for voluntary child support payments made during the pendency of the child support hearings rather than crediting them against the lump sum arrearage; (7) ordered a lump sum repayment of the child support

arrearage rather than permitting repayment on a periodic basis as contemplated by the child support arrearage guidelines; and (8) failed to dismiss the plaintiff's motion for contempt rather than considering the merits of the motion. We conclude that the defendant's claim regarding the manner in which he was credited for voluntary child support payments is moot because there is no practical relief that we could order in light of the fact that he has received full credit for such payments, and that the arguments advanced in support of the remainder of the defendant's claims are unpersuasive. Accordingly, we affirm the judgments of the court.

The following facts and procedural history are relevant to our resolution of these appeals.[4] The parties were married in 2001. The defendant is a plastic surgeon with offices in New York, Norwalk, and London, as well as a consultant and a professor of plastic surgery. The plaintiff is college educated and worked in pharmaceutical sales until shortly after she married the defendant, at which time she worked for the defendant in his medical practice. The parties have three minor children together, one of whom has special needs.[5] Prior to their marriage, the parties entered into a premarital agreement that, in relevant part, limited the plaintiff's alimony in the event of divorce to $50,000 a year for five years and allocated 45 percent of the value of the marital home to the plaintiff as her share of marital property. In September, 2012, the plaintiff initiated an action to dissolve the parties' marriage.

On May 26, 2015, the court, *Tindill, J.*, approved an agreement by the parties to enter into binding mediation/arbitration of the dissolution action.[6] Pursuant to the parties' arbitration agreement, which was made an order of the court, "[t]he parties agree[d] that the following issues in their action for dissolution of marriage shall be the subject of mediation and, if the parties are unable to resolve these issues via mediation, to binding arbitration . . . ." The list of issues to be resolved in arbitration included the validity and enforceability of the premarital agreement; the validity of an alleged rescission of that premarital agreement; a determination of alimony in accordance with General Statutes § 46b-82; an equitable division of marital property, assets, and liabilities pursuant to General Statutes § 46b-81; division of attorney's fees and guardian ad litem fees; and any other relief deemed appropriate by the arbitrator "except as it pertains to child custody and issues of child support."

On August 4, 2015, the arbitrator, former Superior Court Judge Elaine Gordon, issued her arbitration award. As a preliminary matter, the arbitrator determined that the parties' premarital agreement was unconscionable, and thus unenforceable, due to "the present, uncontemplated circumstances" of the parties.[7] The arbitrator issued a number of orders regarding

alimony and the distribution of marital assets, including an order directing the sale of the marital home. In support of her orders, the arbitrator made several factual findings, including that "[t]he defendant's annual [gross] income is found to be approximately $400,000 per year based on his income tax returns, business financial statements and the information he has provided to lending institutions on his applications." As previously noted, the arbitration award indicated that "[t]he issues of custody, access, child support, maintenance and cost of medical insurance for minor children and unreimbursed medical expenses are reserved to the Connecticut Superior Court."[8]

On September 1, 2015, the defendant filed a motion asking the court to confirm the arbitration award and to render judgment dissolving the parties' marriage in accordance with the arbitration award. On that same date, the plaintiff filed a motion asking the court to issue orders on the unresolved matters of child support and postsecondary educational expenses. Neither party filed an objection to the other party's motion, and the matters were set down for a hearing on October 23, 2015. At that time, the court rendered a judgment of dissolution of marriage that incorporated by reference the arbitration award and subsequent clarification.[9] The parties agreed that the court would determine the defendant's child support obligations, including the issue of unreimbursed medical expenses and child care, after an evidentiary hearing, and that child support obligations would be made retroactive to the date of dissolution.

The court conducted an evidentiary hearing on the issue of child support and on certain other postjudgment motions of the parties beginning on December 23, 2015, and continuing to January 22, May 25, June 20 and June 29, 2016. Both parties were present at all hearings and represented by counsel. Both parties testified and submitted a number of exhibits into evidence.

On December 7, 2016, the court issued a memorandum of decision regarding child support. The court indicated that it carefully had reviewed the parties' various claims for relief, memoranda in support thereof, trial briefs, replies, evidence, testimony, relevant rules, statutory authority, case law, and the arguments of counsel. The court made a number of credibility determinations and factual findings, including that neither party "was credible regarding their expenses for the children" and that "[t]he defendant's testimony and evidence regarding his sources of income was not credible." The court found that, "[b]ased on the credible evidence before the court, the defendant has a gross annual income of $560,637—$400,000 gross income from employment as Dr. K Services, P.C., plus $160,637 of rental income from various real estate investments." The court also found that "[t]he parties' combined net weekly income

is $7990" and, thus, that "[t]he parties' net weekly income exceeds the $4000 limit contained within the child support guidelines." The court calculated that "[f]or three children, the presumptive amount of child support is between $824 and $1564 per week . . . ."[10]

The court ordered that the defendant "shall pay $1500.00 per week in child support for the parties' three children, *retroactive to October 23, 2015* . . . ." (Emphasis added.) The court also ordered that the plaintiff is responsible for 25 percent of any unreimbursed medical expenses and child care, and the defendant is responsible for the remaining 75 percent. Moreover, "[t]he [d]efendant shall be given credit for the $18,432.41 in voluntary, postjudgment child support payments made from the date of the dissolution through June 30, 2016." The court instructed the defendant that if he claimed any additional support payments after June 30, 2016, he should provide the plaintiff's counsel with proof of those payments within one week of the court's order. The court stated that credit for the voluntary support payments "shall be in the form of a deduction from *current* support in equal payments over the course of one year." (Emphasis added.) In other words, given that there are fifty-two weeks in a year, the defendant would be entitled to reduce his $1500 child support obligation each week for the first year by an amount equal to one fifty-second of his total voluntary postjudgment child support payments. Finally, the court ordered that the defendant "shall continue to provide and maintain health, dental, and vision insurance for the minor children," and "shall maintain insurance on his life in the amount of $2,000,000, naming the three minor children as equal beneficiaries, for as long as he has a child support obligation to the twins."

On December 23, 2016, the defendant filed a motion to reargue the court's December 7, 2016 decision in which he claimed that the court had miscalculated his income for purposes of the support orders. Specifically, he argued that the arbitrator had found his gross annual income to be $400,000, the court had adopted that finding in its judgment of dissolution when it incorporated the arbitration award therein and, therefore, "the court should not have added on top of that figure rental income that was already included in the total annual income finding of $400,000."[11] Furthermore, he argued that the court had failed to reduce his net income by the amount he had paid in premiums for the life insurance policy benefiting the children. The court denied the motion to reargue on December 29, 2016, without comment. The defendant also filed a motion for clarification requesting, inter alia, that the court set forth "the manner and method" it used to calculate the defendant's gross income. The court denied that motion in part.

On December 12, 2016, the plaintiff filed a motion for contempt claiming that a child support arrearage

of $91,000 existed because the court had made the defendant's child support obligation retroactive to the date of dissolution. The plaintiff argued that the defendant should have paid the arrearage from money that the court had ordered released from an escrow account to the defendant.[12] In response, the defendant filed an objection to the plaintiff's motion for contempt, arguing that there was never a clear and unambiguous court order requiring him to immediately pay any child support arrearage arising from the December 7, 2016 orders. Accordingly, he argued that the motion for contempt should be denied and that he was entitled to attorney's fees for having to defend against a frivolous motion.

The court held a hearing on the motion for contempt on January 3, 2017. The following day, the court issued an order denying the motion for contempt, explaining that the plaintiff had failed to meet her burden of proving by clear and convincing evidence that the defendant wilfully had violated a court order. The court nevertheless took the opportunity to enter a remedial order requiring the defendant to pay the $91,000 child support arrearage to the plaintiff, in full, by no later than April 12, 2017.[13] The court also denied the defendant's request for attorney's fees. These appeals followed.

We begin by stating the overarching and well settled standard that governs our review of claims in divorce actions. "An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the [evidence] presented. . . . It is within the province of the trial court to find facts and draw proper inferences from the evidence presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, *we allow every reasonable presumption in favor of the correctness of its action.* . . . [T]o conclude that the trial court abused its discretion, we must find that the court either incorrectly applied the law or could not reasonably conclude as it did. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. . . . A finding of fact is clearly erroneous when there is *no evidence* in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Emphasis added; internal quotation marks omitted.) *Milazzo-Panico* v. *Panico*, 103 Conn. App. 464, 467–68, 929 A.2d 351 (2007). "As has often been explained, the foundation for this standard is that the trial court is in a clearly advantageous position to assess the personal factors significant to a domestic relations case . . . ." (Internal quotation marks omitted.) *Tuckman* v. *Tuckman*, 308 Conn. 194, 200, 61 A.3d 449 (2013).

## I

The defendant first claims that, in determining his annual income for the purpose of child support, the court was bound by the factual findings of the arbitrator as set forth in the arbitration award and incorporated by reference into the court's judgment of dissolution. He argues that the court's finding that he had a total gross annual income of $560,637 was inconsistent with the prior finding of the arbitrator that his gross annual income was $400,000, and, therefore, the court's finding was clearly erroneous. According to the defendant, because the court's child support orders were based on an erroneous factual finding, this court should order them set aside. The plaintiff responds that a trial court is not bound to accept the factual findings in an arbitrator's award when determining an issue that was specifically excluded by the parties from arbitration and expressly reserved to the Superior Court by the award and by statute. We agree with the plaintiff and, accordingly, reject the defendant's claim.

Stated succinctly, the issue before us is whether the arbitrator's factual finding regarding gross income, which was made in the context of determining alimony and other issues submitted to arbitration, is entitled to preclusive effect in the court's subsequent adjudication of child support, an issue that was expressly excluded from arbitration by General Statutes § 52-408, which excludes from the scope of arbitration in dissolution actions "issues related to child support," and the parties' arbitration agreement. In arguing that the trial court was required to adopt the arbitrator's findings of fact regarding the parties' gross income, the defendant relies on the deference that courts generally have afforded to arbitration decisions and also, by implication, invokes the doctrine of collateral estoppel or issue preclusion.

The defendant's arguments require us to engage in statutory interpretation of § 52-408, which presents a question of law over which our review is plenary. See *Smith* v. *Smith*, 249 Conn. 265, 272, 752 A.2d 1023 (1999). "[W]hen construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine the meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpre-

tive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *Sosin* v. *Sosin*, 300 Conn. 205, 227–28, 14 A.3d 307 (2011).

We begin by examining the text of § 52-408, which legislatively sanctions the use of arbitration in civil actions, including actions for the dissolution of marriage. The statute provides in relevant part: "[A]n agreement in writing between the parties to a marriage to submit to arbitration any controversy between them with respect to the dissolution of their marriage, *except issues related to child support, visitation and custody*, shall be valid, irrevocable and enforceable, except when there exists sufficient cause at law or in equity for the avoidance of written contracts generally." (Emphasis added.) General Statutes § 52-408.

The statute's use of the term "issues related to child support" is both broad and unqualified. For example, the statute does not distinguish between legal and factual issues. The absence of such qualifying language conveys the legislature's intent to render inarbitrable not only a final determination of a party's child support obligations but any and all *related issues*, both legal and factual, that pertain to such a determination.

Our child support guidelines are based on an income share model; see Child Support and Arrearage Guidelines (2015), preamble, § (d); meaning an accurate and complete determination of the parties' respective incomes is essential to ensure that adequate resources are directed toward affected children. Because a finding of the parties' income is a mandatory prerequisite to the determination of a child support order, it is indisputably an "issue related to child support," and such a finding cannot be conclusively determined by an arbitrator for purposes of calculating child support under the clear and unambiguous language of § 52-408. The defendant offers no analysis of § 52-408 in asserting that the arbitrator's factual finding regarding the defendant's income should be binding on a court determining child support obligations.[14]

Even if we were not convinced that the exclusionary provision of § 52-408 is clear and unambiguous as to its scope, our interpretation is consistent with extrinsic evidence of the legislature's intent, including circumstances surrounding the enactment of the provision at issue, the policy it was intended to implement, and its relationship to common-law principles. The language in § 52-408 excluding from arbitration issues related to child support was added to the statute by the legislature in 2005.[15] See Public Acts 2005, No. 05-258, § 2 (P.A. 05-258). The exclusionary language is consistent with the importance that this state attaches to accurate and equi-

table determinations of child support as reflected in our child support guidelines.[16] Although it is true that the promulgation of our child support guidelines, which are applicable to all determinations of child support, "substantially circumscribe[d] the traditionally broad judicial discretion of the court in matters of child support"; (internal quotation marks omitted) *Maturo* v. *Maturo*, 296 Conn. 80, 116, 995 A.2d 1 (2010); the court nevertheless retains discretion to deviate from those guidelines if it determines that doing so "would be in the best interests of the child and financially equitable to the parties." Id.

Custody and support issues not only impact the divorcing parents but also significantly impact the future health and welfare of children for whom child support is intended to benefit. In *Guille* v. *Guille*, 196 Conn. 260, 262–64, 492 A.2d 175 (1985), our Supreme Court discussed the independent nature of a child's right to support and held that this right cannot be vitiated or circumscribed by way of an agreement between the parents. In *Guille*, the court first recognized that General Statutes § 46b-84 (a) imposes a duty on divorcing parents to "maintain the child according to their respective abilities, if the child is in need of maintenance." Id., 263. In the court's view, this statutory duty "creates a corresponding right in the children to such support." (Internal quotation marks omitted.) Id. The court in *Guille* also emphasized that although child support orders are "made and enforced as incidents to divorce decrees . . . the minor children's right to parental support has an independent character, separate and apart from the terms of the support obligations as set out in the judgment of dissolution." (Citation omitted; internal quotation marks omitted.) Id.

"The independent nature of a child's right to parental support [had been] recognized by [our Supreme Court] long before that right was codified in our statutes." Id. As an example, the court in *Guille* cited to its decision in *Burke* v. *Burke*, 137 Conn. 74, 80, 75 A.2d 42 (1950), in which it stated: "A husband and wife cannot make a contract with each other regarding the maintenance or custody of their child which the court is compelled to enforce, nor can the husband relieve himself of his primary liability to maintain his child by entering into a contract with someone else to do so. The welfare of the child is the primary consideration. The court may recognize the contract, but such contract will not be enforced longer than it appears to be for the best interests of the child, and parents entering into such a contract are presumed to do so in contemplation of their obligations under the law and the rights of the child." (Internal quotation marks omitted.) *Guille* v. *Guille*, supra, 196 Conn. 264.

In the arbitration agreement in the present case, the list of issues to be resolved included the validity and

enforceability of the premarital agreement; the validity of an alleged rescission of that premarital agreement; a determination of alimony; an equitable division of marital property; and attorney's fees and guardian ad litem fees. The resolution of those issues could not "affect the minor children's right . . . for parental maintenance"; id., 267; and extending the impact of the parent's resolution of nonsupport issues would violate the statutory prohibition against arbitrating child support. Furthermore, it would be inconsistent with our concerns for the best interest of children, an ideal that permeates our statutes and decisional law, to permit issues related to child support to be resolved conclusively in arbitration, a nonjudicial forum outside the control of our courts. See, e.g., *Masters* v. *Masters*, 201 Conn. 50, 64–65, 513 A.2d 104 (1986) ("the ultimate responsibility for determining and protecting the best interests of children in family disputes rests with the trial court and not with the parties to a dissolution action").[17]

There is no doubt that "[t]he courts of this state encourage arbitration as a means of alternative dispute resolution . . . ." *Scinto* v. *Sosin*, 51 Conn. App. 222, 227, 721 A.2d 552 (1998), cert. denied, 247 Conn. 963, 724 A.2d 1125 (1999). They have "for many years wholeheartedly endorsed arbitration as an effective alternative method of settling disputes intended to avoid the formalities, delay, expense and vexation of ordinary litigation. . . . When arbitration is created by contract, we recognize that its autonomy can only be preserved by minimal judicial intervention. (Internal quotation marks omitted.) *Stutz* v. *Shepard*, 279 Conn. 115, 124, 901 A.2d 33 (2006). "The parties themselves, by the agreement of the submission, define the powers of the arbitrator. . . . The submission constitutes the charter of the entire arbitration proceedings and defines and limits the issues to be decided." (Internal quotation marks omitted.) *Naek Construction Co.* v. *Wilcox Excavating Construction Co.*, 52 Conn. App. 367, 370, 726 A.2d 653 (1999). "[If] the submission does not otherwise state, the arbitrators are empowered to decide factual and legal questions and an award cannot be vacated on the grounds that . . . the interpretation of the agreement by the arbitrators was erroneous. . . . [Generally], courts will not review the evidence considered by the arbitrators nor will they review the award for errors of law or fact." (Internal quotation marks omitted.) *Harty* v. *Cantor Fitzgerald & Co.*, 275 Conn. 72, 80, 881 A.2d 139 (2005).

Nevertheless, although binding arbitration may be utilized to resolve many types of issues arising in the course of civil litigation, including in a marital dissolution action, the legislature concluded, as a matter of public policy, that issues involving custody, visitation, and child support must be resolved only by a court. This court previously has indicated that if a court has

a statutorily mandated duty to decide an issue, it would be an improper delegation of judicial authority to permit that issue to be resolved through binding arbitration, particularly because of the limited opportunity for judicial review of arbitration awards. See *Nashid* v. *Andrawis*, 83 Conn. App. 115, 121–22, 847 A.2d 1098 (plain error to permit future disputes regarding custody and visitation to be decided in arbitration), cert. denied, 270 Conn. 912, 853 A.2d 528 (2004).

We simply are not persuaded that in an adjudication of child support following binding arbitration, a court must give preclusive effect to extrajudicial factual findings, particularly if the correctness of those findings is so integral to a resolution of an issue expressly excluded from arbitration in accordance with both § 52-408 and the parties' arbitration agreement. In other words, any findings the arbitrator made in disposing of the claims submitted had no effect on the court's duty to make an independent determination of the parties' child support obligation, unfettered by the findings of the arbitrator. Because a determination as to the proper amount of child support hinges almost entirely on a correct calculation of the parties' income, and it is the stated policy of this state that issues of child support be decided only by the court, it would run contrary to that policy to require the court to defer to findings of income made by an arbitrator, who was not tasked with considering the parties' incomes for that purpose.[18] Said another way, the court's reliance on income findings of the arbitrator in determining child support obligations would constitute an impermissible delegation of judicial authority, something we previously have concluded amounts to plain error. See id.

We conclude that, although the court incorporated the arbitration award by reference into the dissolution judgment, it does not follow that the court was bound by every factual finding contained in the award in determining the defendant's child support obligation. In exercising its important and independent statutory obligation to determine child support—an issue important not only to the parties but to the children meant to benefit from such orders—the court was not legally bound by the arbitrator's factual findings regarding gross income. To hold otherwise could undermine the court's function to ensure that children receive an adequate level of support, and that concern outweighs any policy cautioning against judicial interference with arbitration. Accordingly, we reject the defendant's claim that the court was bound by the factual finding of the arbitrator regarding the defendant's gross income.

## II

The defendant next claims that even if the court was not legally bound by the arbitrator's finding with respect to his gross income, the court's finding that the defendant earned $400,000 in gross income from employment

was clearly erroneous. The plaintiff counters that the court's finding was correct and fully supported by the record. Because there is evidence in the record that supports the court's finding, we conclude that the finding was not clearly erroneous.

"A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Because it is the trial court's function to weigh the evidence and determine credibility, we give great deference to its findings. . . . In reviewing factual findings, [w]*e do not examine the record to determine whether the* [*court*] *could have reached a conclusion other than the one reached. . . .* Instead, we make every reasonable presumption . . . in favor of the trial court's ruling." (Emphasis added; internal quotation marks omitted.) *Hammel* v. *Hammel*, 158 Conn. App. 827, 832–33, 120 A.3d 1259 (2015).

The defendant argues that the record contains no evidence that would support the court's finding that he earned $400,000 in gross income from his employment, and, therefore, the finding is clearly erroneous. He indicates that his financial affidavit submitted into evidence listed his gross income earned from employment as $360,000. He further notes that his 2015 income tax return, which was submitted into evidence, states that he earned $170,541 in gross income from employment. As our standard of review makes clear, however, the existence of evidence that is contrary to the court's finding is not dispositive of whether the court's finding is clearly erroneous.

The trial court, in its role as the trier of fact, was not bound by the financial numbers contained in either party's financial affidavits and was free to assess the credibility of the parties with respect to the reliability of evidence proffered to establish income. See *Olson* v. *Olson*, 71 Conn. App. 826, 834, 804 A.2d 851 (2002). The court was free to make findings that differed from the parties' positions, provided that evidence existed to support such findings. Here, the court expressly indicated in its memorandum of decision that it found the evidence presented by the defendant regarding his income not credible and untruthful. See *Billington* v. *Billington*, 27 Conn. App. 466, 469, 606 A.2d 737 (contours of determination of credibility uniquely shaped by trial court and not reviewable on appeal), cert. denied, 224 Conn. 906, 615 A.2d 1047 (1992). Moreover, contrary to the defendant's assertion on appeal, our review of the record reveals evidence from which the court reasonably could have determined that the defendant's gross income from employment was at least $400,000.[19]

First, the plaintiff testified during the hearing that

she was aware of the defendant's earnings during the course of their marriage. She testified that he had three sources of income from employment: his medical practice, consulting for medical companies, and teaching. In part, her knowledge of his earnings came from her having worked as the business administrator for the defendant's medical practice, in which capacity she had access to payroll documents. She testified that the defendant's salary was $16,000 every two weeks, which amounts to a yearly income from employment of $416,000.

Second, the plaintiff offered into evidence a consumer credit application that the defendant completed in connection with a lease he obtained in March, 2016, for a new BMW automobile. On the application, the defendant disclosed in the employment section of the application that his employer's name was Dr. K Services, P.C., and that his gross annual income from employment was $400,000.

Given that the true measure of the defendant's income was highly contested, and that the trial court found that the defendant's presentation of his finances, including income, was misleading, the court relied on other evidence in the record. There was certainly evidence, including the defendant's admission on the automobile application, that his income from employment was $400,000. Because the finding is supported by evidence and we are not left with any firm conviction that a mistake was made, we conclude that the trial court's finding was not clearly erroneous.

### III

The defendant's third claim is that, in calculating his gross income, the court improperly determined the amount of gross rental income he received from property awarded to him as part of the division of marital assets. We are not persuaded.

"The [child support] guidelines worksheet is based on net income; weekly gross income is listed on the first line on the worksheet, and the subsequent lines list various deductions, including federal income tax withheld and social security tax. . . . The guidelines are used by the court to determine a presumptive child support payment, which is to be deviated from only under extraordinary circumstances. . . . Our regulations define 'gross income' as 'the average weekly earned and unearned income *from all sources* before deductions, including but not limited to the items listed in subparagraph (A) of this subdivision, but excluding the items listed in subparagraph (B) of this subdivision.'" (Citation omitted; emphasis added.) *Giordano* v. *Giordano*, 153 Conn. App. 343, 356–57, 101 A.3d 327 (2014), citing Regs., Conn. State Agencies § 46b-215a-1 (11). One item expressly included in subparagraph (A) is "rental income after deduction of reasonable and neces-

sary expenses . . . ." Regs., Conn. State Agencies § 46b-215a-1 (11) (A) (xiv). Any challenge to the court's factual findings regarding rental income is subject to our clearly erroneous standard of review.

Although the defendant acknowledges that the child support guidelines permit the inclusion of rental income in the calculation of gross income, he argues that the court failed to "delineate how the court arrived at the figure of $160,637." He also argues that "[n]owhere in the record can there be found any indication of how the court arrived at the figure of $160,637 or whether the court deducted reasonable and necessary expenses from any such rental income." (Emphasis omitted.) Further, the defendant notes that the court's rental income figure matches the total found in a chart that the plaintiff prepared and attached to her posttrial brief, which, as the defendant correctly maintains, was never submitted into evidence during the hearing.

The court did not provide a detailed explanation of how it arrived at its calculation of rental income. After it set forth its findings regarding the defendant's total gross income, however, it did indicate the evidentiary basis for its finding, citing to the plaintiff's exhibits 7 and 13, and the defendant's testimony of May 25 and June 29, 2016. Exhibit 13 is a copy of the defendant's 2015 individual tax return. Schedule E of that return contains details of the income and expenses associated with the rental properties awarded to the defendant in the judgment of dissolution. Although the defendant maintains that the court improperly utilized the rental income chart that the plaintiff prepared and attached to her posttrial brief, which was never made an exhibit at the hearing, the chart references the defendant's 2015 tax return, which was an exhibit, and the numbers contained in the chart merely reflect figures contained in that tax return. The figures from the 2015 tax return, as used on the plaintiff's chart, were easily verified by the court by comparing the chart's figures with those on the tax return. Accordingly, we conclude that a sufficient evidentiary basis for the court's rental income finding exists.

Finally, the defendant argues that both the plaintiff's chart and the court's conclusion regarding rental income do not comport with the evidence presented because they disregard and omit from their calculation two properties that generated substantial losses. According to the defendant, if those properties were considered, his net rental income would have been substantially lower.

The plaintiff argues, however, that those properties were sold prior to the child support hearing, and thus any effect that the losses from those properties had on total rental income in 2015 were properly disregarded in calculating future income for the purposes of determining child support. The defendant does not dis-

pute that assertion in his reply brief and fails to explain why it would be improper for the court to consider only properties that would generate income in the future in calculating income on which to base his prospective child support obligations. On the basis of our review, we conclude that the court's calculation and inclusion of rental income in its determination of the defendant's total gross income was not clearly erroneous.

IV

In the defendant's fourth claim, he asserts that the court improperly failed to take into account his payment of life insurance premiums in calculating his gross income. The plaintiff responds that the defendant failed to provide the court with information regarding life insurance premiums and that the court properly accounted for all insurance premium payments brought to the attention of the court and reflected in the record. We agree with the plaintiff.

The following additional facts are relevant to this claim. The defendant testified that he maintained two life insurance policies that provided a total of $4,000,000 in coverage.[20] According to the defendant, the premiums for those policies were paid by his medical practice, and those payments were attributable to him as additional income. The life insurance policies are listed on the defendant's financial affidavit, which also includes as a personal expense his monthly life insurance premiums of $1053. The premium payment amounts are not broken out per policy. The child support guidelines worksheet submitted by the defendant to the court did not include any deduction for life insurance premiums, presumably because the defendant objected to the plaintiff's claim for relief requesting that the court order him to maintain $2,000,000 in life insurance for the benefit of the children. He argued that he would not be able to maintain his existing policies once they expired and that it would be financially unfeasible or overly burdensome for him to obtain new policies as a sixty-four year old man.

The court made the following order with respect to life insurance: "The defendant shall maintain insurance on his life in the amount of $2,000,000, naming the three minor children as equal beneficiaries, for as long as he has a child support obligation to the twins." The court's calculation of net income for the purposes of child support, which is set forth on the court's child support guidelines worksheet attached as the court's exhibit 1 to the court's memorandum of decision, deducts $406 from the defendant's gross weekly income for premiums paid for the children's medical and dental insurance. Although the worksheet also contains a line for deducting the premium paid for "court-ordered life insurance for benefit of child," the court indicated $0 on that line.

The defendant stood to benefit from any reduction in his gross income attributable to life insurance premium payments. As such, he bore the burden to produce whatever evidence was necessary for the court to calculate this deduction. Our review of the record, however, including the exhibits and testimony offered during the hearing, show that the defendant never provided the court with a breakdown of his existing premium payments for the $4,000,000 in life insurance coverage he disclosed on his financial affidavits, including how the amount of premiums paid for those policies was applicable to the court's calculation of life insurance necessary to secure the defendant's child support obligation, an amount of insurance that was significantly less. Although he indicated on his financial affidavit a monthly personal expense for life insurance of $1053, he lists several insurance policies with no details of the policies' beneficiaries or premium payments per policy. Because the court had no evidentiary basis from which to calculate a credit against his income for a $2,000,000 life insurance policy benefiting the children, we cannot conclude that the court's failure to include a credit in calculating net income was a clear abuse of discretion.

V

The defendant next claims that the court improperly failed to explain the basis for exercising its discretion to order child support in an amount that exceeded the child support guidelines' presumptive minimum. The question presented by this claim is whether the court is required to articulate why it chose the specific amount of child support that it did if that amount falls within the range of the minimum and maximum presumptive support amounts. We conclude that there is no such requirement and, accordingly, reject the defendant's claim.

"The question of whether, and to what extent, the child support guidelines apply . . . is a question of law over which this court should exercise plenary review." *Misthopoulos* v. *Misthopoulos*, 297 Conn. 358, 367, 999 A.2d 721 (2010). Further, whether the court is legally obligated to articulate the basis for a child support award also poses a legal question that invokes our de novo review. "It has long been established that the guidelines, as promulgated by a commission empowered pursuant to legislation enacted in 1989; see Public Acts 1989, No. 89-203; were intended to substantially [circumscribe] the traditionally broad judicial discretion of the court in matters of child support." (Internal quotation marks omitted.) *Ray* v. *Ray*, 177 Conn. App. 544, 563, 173 A.3d 464 (2017).

"[T]he . . . guidelines shall be considered in all determinations of child support amounts within the state and . . . the guidelines consist of the Schedule of Basic Child Support Obligations as well as the principles

and procedures set forth [therein]." (Emphasis omitted; internal quotation marks omitted.) Id., 563–64. Additionally, "[t]he 2015 guidelines codified developments in recent cases decided by the Supreme Court and this court regarding the consideration of child support order amounts whenever the parties' combined net weekly income exceeds $4000." Id., 564; see also Child Support and Arrearage Guidelines, supra, preamble, § (e) (5), p. ix.

"[I]n awarding child support, a court must consider and apply statutory child support and arrearage guidelines unless application of the guidelines is inequitable or inappropriate under the circumstances." *Lusa* v. *Grunberg*, 101 Conn. App. 739, 741, 923 A.2d 795 (2007). "To enter child support orders that deviate from the presumptive support amount, the court must make specific findings on the record to explain its reasons for doing so." Id. "[A]ny deviation from the schedule or the principles on which the guidelines are based must be accompanied by the court's explanation as to why the guidelines are inequitable or inappropriate and why the deviation is necessary to meet the needs of the child." *Maturo* v. *Maturo*, supra, 296 Conn. 95–96.

"In *Maturo*, [our Supreme Court] . . . concluded that when a family's combined net weekly income exceeds $4000, the court should treat the percentage set forth in the schedule at the highest income level as the presumptive ceiling on the child support obligation, subject to rebuttal by application of the deviation criteria enumerated in the guidelines, as well as the statutory factors described in § 46b-84 (d)." (Internal quotation marks omitted.) *Misthopoulos* v. *Misthopoulos*, supra, 297 Conn. 369–70. Our Supreme Court later clarified that "as long as the child support award is derived from a total support obligation within this range—between the presumptive minimum dollar amount and the presumptive maximum percentage of net income—*a finding in support of a deviation is not necessary.*" (Emphasis added.) *Dowling* v. *Szymczak*, 309 Conn. 390, 402, 72 A.3d 1 (2013).

The child support guidelines provide that when the combined weekly net income of the parents is $4000, the presumptive minimum of child support for three children is $824 a week. As indicated previously, the maximum is calculated by multiplying the combined weekly income by the applicable percentage, which in this case is 20.61 percent. Regs., Conn. State Agencies § 46b-215a-2c. Here, there is no dispute that the amount of support ordered by the court fell within the range between the presumptive minimum and maximum amounts permitted under the child support guidelines. Because the court did not deviate from the guidelines, the court was not required to articulate statutory deviation criteria.

In his appellate brief, the defendant relies on language

in § 46b-215a-2c that provides as follows: "When the parents' combined net weekly income exceeds $4000, child support awards shall be determined on a case-by-case basis, consistent with statutory criteria, including that which is described in subsection (d) of section 46b-84 of the Connecticut General Statutes." Regs., Conn. State Agencies § 46b-215a-2c (a) (2). General Statutes § 46b-84 (d) provides that "[i]n determining whether a child is in need of maintenance and, if in need, the respective abilities of the parents to provide such maintenance and the amount thereof, the court shall consider the age, health, station, occupation, earning capacity, amount and sources of income, estate, vocational skills and employability of each of the parents, and the age, health, station, occupation, educational status and expectation, amount and sources of income, vocational skills, employability, estate and needs of the child." The defendant reads the regulatory language as mandating that a court articulate why it is ordering any amount falling within the presumptive minimum and maximum support provided in the guidelines and notes that "[n]owhere in the memorandum of decision does the court indicate that it considered the statutory criteria of [§ 46b-84 (d)] in deciding where within $824 per week . . . and $1580 per week . . . child support should fall."

Although the statutory language requires that child support awards shall be consistent with statutory criteria, it does not "mandate that a court articulate why" it is ordering an amount consistent with the criteria. "In accordance with the statutory directives set forth in General Statutes § 46b-215b (a), the guidelines emphasize that the support amounts calculated thereunder are the correct amounts to be ordered by the court unless rebutted by a specific finding on the record that such an amount would be inequitable or inappropriate." *Maturo* v. *Maturo*, supra, 296 Conn. 92. In this case, the child support award was within the range established by the guidelines, and the defendant made no argument that the amount ordered was inequitable or inappropriate. Further, there is nothing in the record from which we can conclude that the court's decision was not made with consideration of the criteria set forth in § 46b-84 (d).

In making its orders and findings of fact, the court conducted an extensive evidentiary hearing and reviewed the parties' various claims for relief, memoranda in support thereof, trial briefs, replies, evidence, testimony, relevant rules, statutory authority, case law, and the arguments of counsel. Notably, these findings pertained to the health and educational needs of the children, as well as the parties' ages, health, educational status, employability, earning capacities, and sources of income. The court calculated that, in this case, the maximum amount of child support per week was $1564. The actual amount of child support ordered by the court

was $1500 per week. Because the child support order was consistent with statutory criteria and within the range between minimum and maximum support amounts established by the guidelines, we find no abuse of discretion in the court's ruling. Further, because no deviation from the guidelines occurred, the court was not required to provide any additional explanation for its decision. In sum, the trial court did not abuse its discretion in rendering its December 7, 2016 child support orders.

## VI

We turn next to those claims challenging the court's order requiring the defendant to make a lump sum payment of $91,000 to the plaintiff to satisfy a child support arrearage that resulted from the court's December 7, 2016 order making his child support obligation retroactive to the date of dissolution. The defendant first claims that in calculating the $91,000 child support arrearage, the court failed to credit properly the voluntary child support payments that he made to the plaintiff during the pendency of the child support proceedings. Specifically, the defendant maintains that the court was obligated to subtract the amount of the voluntary payments directly from the amount of the arrearage, rather than providing him with credit for the voluntary payments by temporarily reducing his child support obligations for a period moving forward. The plaintiff responds that the defendant's claim is moot because the court accounted for and fully credited the defendant for all child support voluntarily paid by permitting the defendant to reduce his future child support obligations proportionally over the first year, and the defendant availed himself of that remedy. The plaintiff further argues that even if the claim is not moot, it fails on its merits because the court acted well within its discretion in crafting the remedy provided. We agree with the plaintiff that because the defendant reduced his weekly child support obligation in accordance with the court's order and, thus, has now received full credit for his voluntary child support payments, this court cannot provide the defendant with any practical relief by reviewing this claim. Accordingly, we dismiss the claim as moot.

"Mootness implicates [the] court's subject matter jurisdiction and is thus a threshold matter for us to resolve . . . . It is a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . Because mootness implicates subject matter jurisdiction, it presents a question of law over which our review is plenary." (Internal quotation marks omitted.) *Schull* v. *Schull*, 163 Conn. App. 83, 98–99, 134 A.3d 686, cert. denied, 320 Conn. 930, 133 A.3d 461 (2016).

The defendant does not challenge the total amount of the arrearage ordered by the court, having stipulated that the amount owed was $91,000. He also raises no claim that he was entitled to a greater amount of credit on the basis of the voluntary payments made during the pendency of the child support proceedings. It is simply the form of the credit that the defendant takes issue with, maintaining that the court should have applied his voluntary child support payments directly against the arrearage and arguing that most courts that have addressed similar situations have applied voluntary payments to reduce directly any arrearage.[21] Nevertheless, because the defendant has now received full credit for his voluntary payments, there is no practical relief that could flow from our determination of whether he should have received that credit as an offset to the lump sum payment rather than as a reduction in his future child support payments. Even if we were to determine that the court abused its discretion in the manner in which it credited the voluntary payments, we cannot formulate a remedy that would effectively rewind the clock in this case. Any decision would be purely academic at this point because it would not alter the existing status quo, namely, that the defendant has received full credit for those voluntary payments he made. This claim, accordingly, is dismissed as moot.

## VII

The defendant next claims that the court improperly ordered him to pay a lump sum to satisfy the child support arrearage rather than permitting him to satisfy that arrearage on a weekly basis, as contemplated by the child support arrearage guidelines. The plaintiff argues that the defendant's claim is frivolous because, although the guidelines prescribe the manner in which a court generally must calculate periodic payment of a child support arrearage, the court nevertheless retains discretion to order a lump sum payment. We agree with the plaintiff.

Whether the court was required to utilize the arrearage calculation formula set forth in the child support arrearage guidelines is a legal question over which our review is plenary. Although the preamble to the child support and arrearage guidelines is not part of the official regulations, and thus not binding on this court, we find it persuasive in resolving the defendant's claim. See *Maturo* v. *Maturo*, supra, 296 Conn. 92–93 (noting preamble is not part of regulations but is intended to assist in their interpretation). Specifically, section (i) of the preamble discusses the arrearage guidelines and their intended applicability, providing in relevant part: "[General Statutes § 46b-215a] requires the development of guidelines for orders of payment on arrearages. Such guidelines are to be based on the obligor's ability to pay. The commission interprets the statute to apply only to the determination of periodic payments, *and so*

*does not address in the regulations the determination of lump sum payments, which determination remains subject to the discretion of the judge or family support magistrate.*" Child Support and Arrearage Guidelines, supra, preamble, § (i), p. xix. This same position is also reflected in the regulations themselves. Subsection (a) of 46b-215a-3a, which governs the scope of the arrearage guidelines, provides in relevant part that the arrearage guidelines "shall be used to determine *periodic payments* on child support arrearages . . . . The determination of lump sum payments remains subject to the discretion of the judge or family support magistrate, in accordance with existing law." Thus, the guidelines have no applicability to orders requiring lump sum payment of arrearages, nor do the guidelines in any way curtail a trial court's discretion to order a lump sum payment, provided that the court determines that the obligor has the ability to comply with the order. General Statutes § 46b-215a (a) ("orders of payment on any arrearage and past due support shall be based on . . . the obligor's ability to pay").

In the present case, the court articulated that it ordered the $91,000 lump sum arrearage payment in the present case because it determined that the defendant had the ability to pay, given his current income and other finances, including the court's release to the defendant of $100,000 held in escrow at the time it issued its child support orders. The court indicated that it had released the funds specifically to aid the defendant in meeting his child support obligations. In short, the defendant has failed to demonstrate that the arrearage guidelines were applicable to the lump sum order or that the court abused its discretion in ordering a lump sum rather than periodic payments. Accordingly, this claim fails.

VIII

Finally, the defendant claims that rather than having denied the plaintiff's motion for contempt on its merits, which resulted in the remedial order requiring the defendant to pay the arrearage that arose out of the court's retroactive order of child support, the court should have dismissed the plaintiff's motion for contempt in its entirety. According to the defendant, because the court's child support order did not contain any express calculation of an arrearage owed by the defendant as a result of the child support order's retroactivity or an order directing the defendant to pay such an arrearage by a date certain, there was no factual basis for a motion for contempt. The defendant asserts on appeal, therefore, that the plaintiff's motion for contempt failed to state a proper claim for contempt and also failed to comply with the specific requirements of Practice Book § 25-27.[22] Because the defendant's specific claim that the trial court should have dismissed the motion for contempt was not raised before the trial

court, we decline to review it for the first time on appeal.

In the defendant's objection to the motion for contempt, he challenged the merits of the motion by arguing that he had not violated any clear and unambiguous order because the court never stated precisely when or how the arrearage should be paid. The defendant's objection asked the trial court to deny the motion for contempt, which the court did, apparently for the reasons stated by the defendant. The defendant never asked the court to strike or dismiss the motion, either on the basis of the motion's legal or factual insufficiencies or on the ground that the motion did not comply with our rules of practice. As we have stated on numerous occasions, we will not entertain a claim or legal theory raised for the first time on appeal. "[A] party cannot present a case to the trial court on one theory and then seek appellate relief on a different one . . . . The theory upon which a case is tried in the trial court cannot be changed on review . . . [much like] an issue not presented to or considered by the trial court cannot be raised for the first time on review." (Citation omitted; internal quotation marks omitted.) *Corrarino* v. *Corrarino*, 121 Conn. App. 22, 30, 993 A.2d 486 (2010). We therefore decline to review this claim.

The judgments are affirmed.

In this opinion the other judges concurred.

* October 23, 2018, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] Specifically, the arbitrator's award stated in relevant part: "The issues of custody, access, child support, maintenance and cost of medical insurance for the minor children and unreimbursed medical expenses are reserved to the Connecticut Superior Court."

[2] On June 19, 2017, this court granted the defendant's motion to consolidate his two appeals in accordance with Practice Book § 61-7 (b) (3).

[3] The defendant also asserted that the court had failed to deduct health insurance premiums but, in his reply brief, concedes to the contrary, withdrawing that aspect of his claim.

[4] We rely on those facts set forth by the court in its memoranda of decision and those that are undisputed in the record.

[5] The parties have twin daughters who were born in May, 2003, and a younger daughter who was born in February, 2006.

[6] At that time, the parties also submitted a final custody and parenting plan that was made an order of the court. Pursuant to the parenting plan, the parties would have joint legal custody of their minor children, and the plaintiff would have primary physical custody subject to periodic visitations with the defendant.

[7] The arbitrator stated in relevant part: "To leave the plaintiff, who has no experience in a competitive workplace after thirteen years, with no assets, an alimony award of five years, which is unrelated to either the plaintiff's needs or the defendant's income, and responsibility for three children, one of whom has special needs, is more than unfair or onerous, it is unconscionable."

[8] In response to requests by the parties, the arbitrator later issued a clarification of her award, the substance of which is not relevant to the issues on appeal.

[9] In its dissolution judgment, the court also reserved jurisdiction over the issue of postmajority educational support.

[10] In his posthearing brief, the defendant argued that the court should conclude that his share of the presumptive child support amount, as calculated pursuant to the guidelines, was $727 per week. The plaintiff, in her posthearing brief, argued that the defendant's share of presumptive child support under the guidelines was $1560 per week, but she sought an upward

deviation to $2028 per week due, in part, to her claim that all three children had special needs.

[11] We note that throughout the evidentiary hearing on the issue of child support, both parties presented evidence pertaining to the defendant's gross income. Such evidence would have been unnecessary if the court legally was bound to credit the factual findings of gross income contained in the arbitrator's award. The defendant, however, never asserted such a position during the hearing on child support. Although the defendant's counsel raised tentative objections during the hearing indicating that the defendant's earning capacity had been determined by the arbitrator, at no point did the defendant directly state to the trial court that he believed that the court legally was bound by the arbitrator's factual findings of income in resolving the issue of child support.

To the contrary, in his posthearing brief, instead of arguing that the arbitrator's finding regarding the defendant's gross income was binding on the court, he argued that the arbitrator had overstated his gross income and asked the trial court to make its own finding for the purpose of calculating child support. Presumably, if the finding of the arbitrator was binding on the court, as the defendant now argues on appeal, the trial court would have had no more authority to find a lower amount of income than it had to find a higher amount. As we have expressed on a number of occasions, we generally disfavor permitting an appellant to take one legal position at trial and then take a contradictory position on appeal. "[O]rdinarily appellate review is not available to a party who follows one strategic path at trial and another on appeal, when the original strategy does not produce the desired result. . . . To allow the [party] to seek reversal now that his trial strategy has failed would amount to allowing him to induce potentially harmful error, and then ambush the [opposing party and the court] with that claim on appeal." (Internal quotation marks omitted.) *Nweeia* v. *Nweeia*, 142 Conn. App. 613, 620, 64 A.3d 1251 (2013).

Furthermore, we note that the doctrine of collateral estoppel, i.e., issue preclusion, "is neither statutorily nor constitutionally mandated. The doctrine, rather, is a judicially created rule of reason that is enforced on public policy grounds." (Internal quotation marks omitted.) *Cumberland Farms*, *Inc.* v. *Groton*, 262 Conn. 45, 58–59, 808 A.2d 1107 (2002). In order to take advantage defensively of the doctrine, it ordinarily should be pleaded or otherwise brought to the attention of the court. See, e.g., Practice Book § 10-50. The defendant made no assertion regarding the binding nature of the arbitrator's finding in the present case until the postjudgment motion to reargue, which was filed after the court had made an independent finding regarding gross income that did not favor the defendant. Nevertheless, because the plaintiff has not argued that the defendant either forfeited or waived his right to challenge the preclusive nature of the arbitrator's factual finding regarding gross income, and the issue was raised by the defendant to the trial court in his motion to reargue the child support order and implicitly rejected by the trial court, we will review the claim.

[12] As part of its December 7, 2016 orders, the court ordered $100,000 from the sale of the marital home that was being held in escrow at the time by the defendant's attorney as security released to the defendant within two business days.

[13] The trial court later issued an articulation setting forth the factual and legal bases for its January 3, 2017 order. In its articulation, the court stated that "[t]he [defendant's] testimony and evidence regarding his sources and amount of income, debts, assets, and liabilities was not credible," and "[t]he information on the [defendant's] sworn financial affidavits . . . regarding his earnings and expenses was not truthful." (Citations omitted.) The court also stated that it had released the $100,000 in escrowed funds to the defendant in order to give him "additional funds" from which to pay the child support arrearage that arose as a result of the court's December 7, 2016 support orders and to meet his child support obligations moving forward. (Emphasis omitted.) The court noted that "despite having the financial means *and* access to liquid pecuniary resources, [the defendant had] paid $0.00 toward the $91,000 arrearage he does not dispute existed." (Emphasis in original.) Regarding the legal bases for its decision, the court indicated that it considered whether the defendant had the ability to pay by the date specified in the court's order and determined that he did, on the basis of his actual employment income, his earning capacity, liquid assets, equity in several real estate interests and investments, and retirement funds. The court further stated that it had relied on General Statutes § 46b-84 and § 46b-215a-3a of the child support and arrearage guidelines effective July 1, 2015.

[14] We note that other states have adopted statutes permitting the arbitration of marital dissolution actions, including issues of custody and child support. As part of those statutes, however, such states have provided for more robust judicial oversight of arbitration awards than ordinarily is available under existing law. See, e.g., *Harvey* v. *Harvey*, 470 Mich. 186, 193–94, 680 N.W.2d 835 (2004) (court had authority under statute to modify arbitrator's award to ensure best interests of children). The absence of such explicit oversight in § 52-408 is additional evidence that our legislature intended that all issues pertaining to child support and custody be reserved to the Superior Court.

[15] Similar language also was added to General Statutes § 46b-66, which now provides in relevant part: "The provisions of [General Statutes § 52-408 et seq.] shall be applicable to any agreement to arbitrate in an action for dissolution of marriage under this chapter, provided (1) an arbitration pursuant to such agreement may proceed only after the court has made a thorough inquiry and is satisfied that (A) each party entered into such agreement voluntarily and without coercion, and (B) such agreement is fair and equitable under the circumstances, and (2) *such agreement and an arbitration pursuant to such agreement shall not include issues related to child support, visitation and custody* . . . ." (Emphasis added.) General Statutes § 46b-66 (c).

[16] Having reviewed the legislative history of P.A. 05-258, we note that the vast majority of public comments, mostly from members of the bar, supported adoption of the bill, many citing favorably to the bill's exclusion of issues related to child support, custody, and visitation because of the need for "careful supervision of those issues" by the court and the "state's special interest" in child support.

In support of the act, then Senator Andrew J. McDonald stated: "Mr. President, this bill is intended to make available to individuals who are becoming involved in a dissolution action an opportunity to voluntarily enter into an arbitration proceeding for the purposes of resolution of that dissolution.

"Mr. President, the bill excludes from the scope of permissible arbitration *any* consideration of custody or child support payments within the scope of the arbitration referral." (Emphasis added.) 48 S. Proc., Pt. 8, 2005 Sess., p. 2272.

[17] To the extent that our Supreme Court in *Masters* v. *Masters*, supra, 201 Conn. 64–65, stated that some issues related to child support might be arbitrable, we note that *Masters* was decided prior to the enactment of § 52-408. Accordingly, that statement in *Masters* has been superseded by statute.

[18] Our analytical approach finds support in the Restatement (Second) of Judgments, which provides useful guidance regarding whether findings made by arbitrators should be binding on courts in subsequent proceedings. Section 84 of the Restatement (Second) provides that courts generally should afford a valid and final arbitration award "the same effects under the rules of res judicata, subject to the same exceptions and qualifications, as a judgment of a court." 2 Restatement (Second), Judgments § 84 (1), p. 286 (1982). Nevertheless, there are several notable exceptions to that rule. In particular, § 84 (3) provides in relevant part: "A determination of an issue in arbitration does not preclude relitigation of that issue if: (a) [a]ccording preclusive effect to determination of the issue would be incompatible with a legal policy or contractual provision that the tribunal in which the issue subsequently arises be free to make an independent determination of the issue in question . . . ." As provided in the commentary to § 84, "[i]t is coherent to treat an arbitration proceeding as wholly self-contained, conclusive as to the claims represented in the award *but inoperative beyond them*." (Emphasis added.) Id., § 84, comment (c), p. 289. Further, "[a] dispute may be governed by an arbitration agreement but also be subject to statutory provisions for alternative or supplementary procedures. The conclusive effect of an arbitration award is subordinate to such provisions." Id., § 84, comment (g), p. 291. The approach of the Restatement (Second) is consistent with our Supreme Court's instruction that "[t]he doctrines of preclusion . . . should be flexible and must give way when their mechanical application would frustrate other social policies based on values equally or more important than the convenience afforded by finality in legal controversies." (Internal quotation marks omitted.) *Delahunty* v. *Massachusetts Mutual Life Ins. Co.*, 236 Conn. 582, 591, 674 A.2d 1290 (1996); id., 592 (holding application of res judicata to bar party from bringing postdissolution action claiming damages for misconduct occurring during marriage would be inappropriate given competing policy considerations).

[19] The trial court's finding of $560,637 in gross income included as a base component $400,000 in gross income from employment, which is the same amount the arbitrator set forth as the defendant's gross income. The arbitrator's award does not break down the components of that figure or indicate whether her finding also incorporated rental income. Thus, the trial court's finding of $560,637 in total gross income, rather than being a wholly inconsistent factual finding from that made by the arbitrator, might simply reflect a more complete representation of the defendant's total gross income. It is not necessary, however, for us to resolve the apparent conflict between the arbitrator's finding and the trial court's finding in order to conclude that the trial court's finding was supported by evidence in the record and, thus, was not clearly erroneous.

[20] The defendant also maintained a separate $500,000 life insurance policy benefiting a former wife from an earlier marriage.

[21] It is axiomatic that trial courts have "wide discretion and broad equitable power to fashion relief in the infinite variety of circumstances which arise out of the dissolution of a marriage." (Internal quotation marks omitted.) *Parisi* v. *Parisi*, 315 Conn. 370, 381, 107 A.3d 920 (2015). Even if we were to conclude that the present claim was not moot and assumed for the sake of argument that the defendant's observation regarding credits for voluntary payments is an accurate one, the mere fact that trial courts may more often directly credit voluntary payments to reduce an arrearage is an insufficient factual basis to support a conclusion that a court that elects not to follow that procedure, as in the present case, has abused its discretion. The defendant has cited no authority that would convince us otherwise.

[22] Practice Book § 25-27 (a) provides: "Each motion for contempt must state (1) the date and specific language of the order of the judicial authority on which the motion is based; (2) the specific acts alleged to constitute the contempt of that order, including the amount of any arrears claimed due as of the date of the motion or a date specifically identified in the motion; (3) the movant's claims for relief for the contempt."