******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

CHELSEA CHAPMAN KIRWAN *v.*
LAURENCE KIRWAN
(AC 40789)

Alvord, Prescott and Norcott, Js.

*Syllabus*

The defendant, whose marriage to the plaintiff previously had been dis-
solved, appealed to this court from the judgments of the trial court
ordering him to pay for a portion of his children's private middle school
tuition and finding him in contempt for violating that order. The dissolu-
tion judgment incorporated by reference a pendente lite arbitration
award that had resolved many of the issues raised in the dissolution
action. The parties, however, expressly reserved for the trial court reso-
lution of child related financial issues. Thereafter, following a hearing,
the trial court issued child support orders, which, by agreement of the
parties, were made retroactive to the date of the dissolution judgment,
and ordered, inter alia, that the parties were to make determinations
regarding their children's private middle school education in accordance
with their parenting plan and that they would share the children's educa-
tional expenses, with the plaintiff responsible for 25 percent and the
defendant responsible for 75 percent. Subsequently, the plaintiff filed
a motion for an order requesting that the court order the defendant to
pay his share of their children's private middle school tuition for the
2015–2016 and 2016–2017 academic years, and later requested that the
defendant also pay his share of the 2017–2018 tuition. The defendant
objected to the motion for an order, arguing that the children's enroll-
ment in the school had not been made in compliance with the parties'
parenting plan, which provided that the parties must consider, discuss
and agree on major decisions concerning their children's education. The
children began attending the private middle school in the fall of 2014,
and the parties entered into their parenting plan in May, 2015. The
trial court granted the plaintiff's motion for an order and ordered the
defendant to pay 75 percent of the children's private middle school
tuition for the subject academic years, and the defendant appealed to
this court. Thereafter, the plaintiff filed a motion for contempt, alleging
that the defendant had failed to pay the children's private middle school
tuition in violation of the court's order. The trial court granted the
motion for contempt, finding that the defendant's failure to comply
with its order was wilful. On the defendant's amended appeal to this
court, *held*:

1. The defendant could not prevail on his claim that the trial court erred
   by ordering him to pay 75 percent of his children's private middle school
   tuition for the 2015–2016, 2016–2017 and 2017–2018 academic years,
   which was based on his claim that the children's enrollment in the
   school was not decided in accordance with the parties' parenting plan;
   that court did not abuse its discretion in granting the plaintiff's motion
   for an order because even if the plaintiff did not confer or consult
   with the defendant regarding the children's continued enrollment in the
   private middle school pursuant to the parenting plan, the parties' deci-
   sion to enroll the children in the school had been made by the fall of
   2014, and the 2015 parenting plan was forward looking, governing the
   parties' collaborative behavior as to future child rearing decisions, and,
   therefore, the trial court reasonably could have found the defendant
   responsible for his 75 percent share of the children's private middle
   school tuition for the subject academic years.

2. The defendant could not prevail on his claim that the trial court erred
   by ordering him to pay the portion of the children's 2015–2016 tuition
   that was incurred prior to the dissolution of the parties' marriage in
   October, 2015; the trial court did not abuse its discretion in allocating
   the marital tuition debt for the 2015–2016 academic year in addition to
   allocating responsibility for the postdissolution tuition for the 2016–2017
   and 2017–2018 academic years in accordance with its child related finan-
   cial orders, that court having properly exercised its authority pursuant
   to the applicable statute (§ 46b-81) to allocate between the parties the

marital debt related to the children's 2015–2016 private middle school tuition, which was incurred prior to the entry of the dissolution judgment.

3. The trial court did not abuse its discretion in finding the defendant in contempt for his failure to comply with its order regarding the children's private middle school tuition: the trial court's underlying order was sufficiently clear and unambiguous to support its finding of contempt, as the court clearly stated that the defendant was obligated to pay 75 percent of the children's private middle school tuition for the 2015–2016, 2016–2017 and 2017–2018 academic years, and its suggestion to the defendant regarding potential outside avenues to effectuate payment of his tuition obligation did not make unclear his financial responsibility for the arrearage created by his failure to pay his share of the tuition; moreover, the defendant's contention that he was unable to pay for the children's tuition, and, therefore, that his noncompliance with the order was not wilful was unavailing, as the court's findings that the defendant's annual income was approximately $400,000 and that he did not meet his burden of proving that he was unable to pay his court-ordered obligation were supported by the testimony of the defendant's accountant and, thus, were not clearly erroneous.

Argued October 25, 2018—officially released January 22, 2019

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk, where the court, *Tindill, J.*, approved the agreement of the parties to enter into binding mediation/arbitration as to certain disputed matters; thereafter, the arbitrator issued an award and entered certain orders; subsequently, the arbitrator issued a clarification of the award; thereafter, the court granted the defendant's motion to confirm the arbitrator's award and rendered judgment incorporating the arbitrator's award and clarification, and dissolving the marriage and granting certain other relief; subsequently, the court issued certain orders; thereafter, the court, *Heller, J.*, granted the plaintiff's motion for an order regarding certain tuition payments; subsequently, the court, *Heller, J.*, denied the defendant's motion to reargue, and the defendant appealed to this court; thereafter, the court, *Heller, J.*, issued an articulation of its decision; subsequently, the court, *Heller, J.*, granted the plaintiff's motion for contempt, and the defendant filed an amended appeal. *Affirmed.*

*Laurence Kirwan*, self-represented, the appellant (defendant).

*Joseph T. O'Connor*, for the appellee (plaintiff).

*Opinion*

ALVORD, J. The present appeal arises following the trial court's October 23, 2015 judgment dissolving the marriage of the plaintiff, Chelsea Chapman Kirwan, and the self-represented defendant,[1] Laurence Kirwan. The judgment incorporated by reference a pendente lite arbitration award that had resolved many of the issues raised in the dissolution action, including alimony, the distribution of marital assets, and the enforceability of a premarital agreement. Both the parties' arbitration agreement and the arbitrator's award, however, expressly reserved for the Superior Court resolution of child related financial issues.[2] Following an evidentiary hearing, the court, on December 7, 2016, issued child support orders, which, by agreement of the parties, were made retroactive to the date of the dissolution judgment. On that same date, the court also ordered the parties to make determinations regarding their children's private middle school education in accordance with their parenting plan. In this appeal, the defendant challenges two subsequent judgments of the trial court, ordering him to pay for a portion of his children's private middle school tuition[3] and finding him in contempt when he failed to do so.

On appeal, the defendant raises various repetitive and overlapping claims of error, which this court has distilled into the three inclusive issues addressed in this opinion. The core of the defendant's claims are that the court erred in (1) ordering him to pay 75 percent of his children's private middle school tuition for the 2015–2016, 2016–2017, and 2017–2018 academic years, because their enrollment in the school was not decided pursuant to the parties' parenting plan, (2) ordering him to pay for a portion of the 2015–2016 school year tuition that was incurred before October 23, 2015, the date of the dissolution, and (3) finding him in contempt. We disagree and, accordingly, affirm the judgments of the trial court.

The following facts and procedural history, relevant to our resolution of the defendant's claims in the present appeal, were recently set forth by this court in *Kirwan* v. *Kirwan*, 185 Conn. App. 713,     A.3d     (2018).[4] "The parties were married in 2001. The defendant is a plastic surgeon with offices in New York, Norwalk, and London, as well as a consultant and a professor of plastic surgery. The plaintiff is college educated and worked in pharmaceutical sales until shortly after she married the defendant, at which time she worked for the defendant in his medical practice. The parties have three minor children together, one of whom has special needs. Prior to their marriage, the parties entered into a premarital agreement that, in relevant part, limited the plaintiff's alimony in the event of divorce to $50,000 a year for five years and allocated 45 percent of the value of the marital home to the plaintiff as her share

of marital property. In September, 2012, the plaintiff initiated an action to dissolve the parties' marriage.

"On May 26, 2015, the court, *Tindill, J.*, approved an agreement by the parties to enter into binding mediation/arbitration of the dissolution action. Pursuant to the parties' arbitration agreement, which was made an order of the court, '[t]he parties agree[d] that the following issues in their action for dissolution of marriage shall be the subject of mediation and, if the parties are unable to resolve these issues via mediation, to binding arbitration . . . .' The list of issues to be resolved in arbitration included the validity and enforceability of the premarital agreement; the validity of an alleged rescission of that premarital agreement; a determination of alimony in accordance with General Statutes § 46b-82; an equitable division of marital property, assets, and liabilities pursuant to General Statutes § 46b-81; division of attorney's fees and guardian ad litem fees; and any other relief deemed appropriate by the arbitrator 'except as it pertains to child custody and issues of child support.'

"On August 4, 2015, the arbitrator, former Superior Court Judge Elaine Gordon, issued her arbitration award. As a preliminary matter, the arbitrator determined that the parties' premarital agreement was unconscionable, and thus unenforceable, due to 'the present, uncontemplated circumstances' of the parties.[5] The arbitrator issued a number of orders regarding alimony and the distribution of marital assets, including an order directing the sale of the marital home. In support of her orders, the arbitrator made several factual findings, including that '[t]he defendant's annual [gross] income is found to be approximately $400,000 per year based on his income tax returns, business financial statements and the information he has provided to lending institutions on his applications.' As previously noted, the arbitration award indicated that '[t]he issues of custody, access, child support, maintenance and cost of medical insurance for minor children and unreimbursed medical expenses are reserved to the Connecticut Superior Court.'

"On September 1, 2015, the defendant filed a motion asking the court to confirm the arbitration award and to render judgment dissolving the parties' marriage in accordance with the arbitration award. On that same date, the plaintiff filed a motion asking the court to issue orders on the unresolved matters of child support and postsecondary educational expenses. Neither party filed an objection to the other party's motion, and the matters were set down for a hearing on October 23, 2015. At that time, the court rendered a judgment of dissolution of marriage that incorporated by reference the arbitration award and subsequent clarification. The parties agreed that the court would determine the defendant's child support obligations, including the issue of

unreimbursed medical expenses and child care, after an evidentiary hearing, and that child support obligations would be made retroactive to the date of dissolution." (Footnotes altered.)

The following additional facts, as found by the trial court, and procedural history are relevant to our resolution of this current appeal by the defendant. On December 7, 2016, following a five day hearing on child related financial orders as well as several postjudgment motions, the court issued a memorandum of decision ordering, inter alia, that the parties were to make determinations regarding their children's private middle school education in accordance with their parenting plan.[6] The court also ordered that the parties would share the children's educational expenses, with the plaintiff responsible for 25 percent and the defendant responsible for 75 percent.

During the course of the marriage and after the divorce proceeding was filed, the parties' children had attended private school at the French-American School of New York from kindergarten through the fourth grade, as the parents agreed that their children should have a more European focused education. The French-American School of New York, upon the plaintiff's inquiry, recommended Saints John and Paul School for the children because it had a similar program but cost less money. The children were accepted into middle school at Saints John and Paul School beginning in the fall of 2014 for their fifth grade year. The middle school at Saints John and Paul School ran from fifth grade through eighth grade.

In January, 2015, the defendant visited Saints John and Paul School, where his daughters were enrolled in fifth grade. The defendant met with the school's assistant principal. During the visit, he asked questions about the school and his children's French language studies. At that time, he expressed no objection to his children being educated at Saints John and Paul School.

On January 19, 2017, the plaintiff filed a motion for an order regarding the defendant's payment of his share of the private middle school tuition. In this motion, the plaintiff requested that the court order the defendant to pay $36,000, representing his share of the tuition costs for the 2015–2016 and 2016–2017 academic years. The plaintiff later requested that the defendant also pay his share of the 2017–2018 tuition costs. In objecting to the plaintiff's motion for an order, the defendant argued that the children's enrollment in private middle school had not been made in compliance with the May, 2015 parenting plan and that he was therefore not obligated to pay his share of the tuition costs. On June 22, 2017, the plaintiff filed a motion seeking an immediate hearing on her motion for order, wherein she also replied to arguments raised in the defendant's objection to her motion for an order.

On July 17, 2017, the trial court, *Heller, J.*, on the record, granted the plaintiff's January 19, 2017 motion for order and overruled the defendant's objection thereto. Specifically, the court found that "under the orders that were entered by Judge Tindill in December, 2016 retroactive to October, [2015], the defendant is obligated to pay 75 percent of the tuition that is past due from 2015 to 2016 and 2016 to 2017, and for the coming year of 2017 to 2018." On July 31, 2017, the defendant filed a motion to reargue. On August 25, 2017, the court issued a written order summarily denying that motion. The defendant then filed this timely appeal.

On September 11, 2017, the defendant filed a motion for articulation of the trial court's July 17, 2017 decision. The plaintiff filed an objection thereto. The trial court summarily denied the motion for articulation and sustained the objection thereto. The defendant then filed a motion for review with this court.

On January 18, 2018, this court ordered the trial court to articulate the factual and legal basis of its July 17, 2017 decision to the extent that the defendant argued that he was not required to pay tuition costs incurred prior to October 23, 2015. On January 26, 2018, the trial court articulated its decision. It explained that the plaintiff incurred the debt to Saints John and Paul School for the parties' children during the 2015–2016 school year prior to the entry of the October, 2015 dissolution judgment, and that, under § 46b-81, the court had the authority to allocate some or all of this liability to the defendant.

On August 9, 2017, the plaintiff filed a motion for contempt. The plaintiff claimed that the defendant had failed to pay, or make arrangements to pay, the amount that he owed to Saints John and Paul School, in violation of the court's July 17, 2017 decision. The court held a hearing on the plaintiff's motion on October 2 and 23, and December 8, 2017.[7] As of the October 2 hearing date, the defendant had failed to make any payments to Saints John and Paul School on his court-ordered share of the children's tuition. By the December 8 hearing date, the defendant had paid only $3500 to Saints John and Paul School toward his $54,894.40 tuition obligation.

On February 5, 2018, the court found the defendant in contempt for failing to comply with the court's July 17, 2017 order to pay 75 percent of his children's tuition for the 2015–2016, 2016–2017, and 2017–2018 academic years. In finding the defendant in contempt, the court determined that the defendant's failure to comply with the court's order was wilful. The defendant's annual income from his medical practice was approximately $400,000. Rather than paying for his children's tuition, the defendant chose to satisfy over $100,000 in other debt. In addition, although he was entitled to $53,519

from his 2016 federal income tax return, the defendant chose to apply the entire amount to his 2017 estimated taxes. In finding the defendant in contempt, the court ordered him incarcerated but stayed the order of incarceration to provide him with an opportunity to purge the contempt by making a payment of $10,278.88 to the plaintiff, which represented 20 percent of the total due by the defendant to Saints John and Paul School. Lastly, the court awarded, pursuant to General Statutes § 46b-87, the plaintiff attorney's fees for the preparation and prosecution of the motion for contempt. The defendant thereafter filed an amended appeal. Additional facts will be set forth as necessary.

I

The defendant claims that the trial court erred by ordering him to pay 75 percent of his children's private middle school tuition for the 2015–2016, 2016–2017, and 2017–2018 academic years, because their enrollment in the school was not decided pursuant to the parenting plan he entered into on May 26, 2015.[8] Specifically, he argues that, under the parenting plan, the plaintiff was obligated to confer and consult with him regarding their children's education. He claims that the plaintiff failed to do so, and, therefore, he is not obligated to pay his 75 percent share of the children's tuition. We disagree.

We begin by setting forth the relevant standard of review. "An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Thus, unless the trial court applied the wrong standard of law, its decision is accorded great deference because the trial court is in an advantageous position to assess the personal factors so significant in domestic relations cases . . . ." (Internal quotation marks omitted.) *Budrawich* v. *Budrawich*, 156 Conn. App. 628, 637, 115 A.3d 39, cert. denied, 317 Conn. 921, 118 A.3d 63 (2015).

We conclude that the court did not abuse its discretion when it granted the plaintiff's motion for an order on July 17, 2017,[9] even if the plaintiff did not confer or consult with the defendant regarding their children's continued enrollment at Saints John and Paul School.

The parties' children began attending middle school at Saints John and Paul School in the fall of 2014. In January, 2015, the defendant visited Saints John and Paul School and expressed no objection to his children being enrolled at its middle school.[10] At the time the parties entered into their parenting plan, in May, 2015, the children were finishing their first year of middle school at Saints John and Paul School. The parenting

plan provides that the parties must consider, discuss and agree on major decisions concerning, inter alia, their children's education. Specifically, the parenting plan provides in relevant part: "Major decisions, which shall be defined as those key issues [affecting] the minor children's health [and] course of study . . . shall be considered, discussed, and agreed to by both parties. . . . The parties recognize that the joint custody provision herein imposes an affirmative obligation to confer and consult with each other and arrive at a consensus regarding major decisions concerning the health, education and welfare of the minor children." The parenting plan does not mention the children's ongoing enrollment in Saints John and Paul School.

In its July 17, 2017 order, the court explained that the children's continued enrollment in middle school at Saints John and Paul School was not a decision governed by the parenting plan because "[t]hat was the status quo. This was not a future plan or a major decision because they were already attending that school when the parties entered into the parenting plan."

The decision to enroll the children in Saints John and Paul School had been made by the fall of 2014, when the children first entered the middle school program. The parenting plan was forward looking and governed the parties' collaborative behavior as to future child rearing decisions. Thus, the court reasonably could have found the defendant responsible for his 75 percent share of the children's private middle school tuition for the 2015–2016, 2016–2017, and 2017–2018 academic years.

II

The defendant also claims that the trial court erred by ordering him to pay the children's tuition that was incurred prior to the October 23, 2015 date of the dissolution. He argues that the court, in its December 7, 2016 memorandum of decision, ordered that he pay 75 percent of the children's private middle school tuition retroactive to October 23, 2015, the date of the dissolution, and, therefore, that order did not cover tuition fees incurred prior to that date. We disagree.

As stated in part I of this opinion, this court "will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Thus, unless the trial court applied the wrong standard of law, its decision is accorded great deference because the trial court is in an advantageous position to assess the personal factors so significant in domestic relations cases . . . ." (Internal quotation marks omitted.)

*Budrawich* v. *Budrawich*, supra, 156 Conn. App. 637.

Under § 46b-81, a court may assign to either party all or any part of the estate of the other party at the time of entering a decree dissolving a marriage. Section 46b-81 "confers broad powers upon the court in the assignment of property, and the allocation of liabilities and debts is a part of the court's broad authority in the assignment of property."[11] (Internal quotation marks omitted.) *Roos* v. *Roos*, 84 Conn. App. 415, 420, 853 A.2d 642, cert. denied, 271 Conn. 936, 936, 861 A.2d 510 (2004).

The plaintiff incurred the debt at issue, to Saints John and Paul School for the 2015–2016 academic year, prior to the entry of the October 23, 2015 dissolution judgment. This children's private middle school tuition bill remained unpaid as of the date of the parties' dissolution. The court had the authority pursuant to § 46b-81 to consider the division of this marital liability in the October, 2015 dissolution judgment if the parties had requested it to do so at that time.[12] However, at the time of the dissolution, the parties agreed to reserve judicial consideration of all child related financial issues. Thereafter, on December 7, 2016, the court addressed those child related financial issues and determined, inter alia, each parent's share of the children's private middle school tuition. Subsequently, on July 17, 2017, the court ruled on the plaintiff's motion for an order on the defendant's payment of his share of the private middle school tuition. On this date, the court exercised its authority, under § 46b-81, to allocate between the parties the marital debt related to the children's 2015–2016 private middle school tuition. It was not an abuse of the court's discretion to allocate the marital tuition debt for the 2015–2016 academic year in addition to allocating responsibility for the postdissolution tuition for the 2016–2017 and 2017–2018 academic years in accordance with its December 7, 2016 child related financial orders.

### III

Finally, the defendant claims that the court erred by finding him in contempt. Specifically, he argues that (1) the court's July 17, 2017 order was not sufficiently clear and unambiguous, (2) the court's factual findings regarding his ability to comply with the order, based on his income, were not supported by the evidence, (3) the court considered the use of his funds prior to the July 17, 2017 order even though there were no automatic orders in place limiting the use of those funds, and (4) he did not have the funds to comply with the order, and, therefore, his noncompliance was not wilful.[13] We conclude that this claim has no merit.

We begin by setting forth our standard of review and relevant legal principles. "First, we must resolve the threshold question of whether the underlying order con-

stituted a court order that was sufficiently clear and unambiguous so as to support a judgment of contempt. . . . This is a legal inquiry subject to de novo review. . . . Second, if we conclude that the underlying court order was sufficiently clear and unambiguous, we must then determine whether the trial court abused its discretion in issuing, or refusing to issue, a judgment of contempt, which includes a review of the trial court's determination of whether the violation was wilful or excused by a good faith dispute or misunderstanding." (Footnote omitted; internal quotation marks omitted.) *Keller* v. *Keller*, 158 Conn. App. 538, 545, 119 A.3d 1213 (2015). "[T]he credibility of witnesses, the findings of fact and the drawing of inferences are all within the province of the trier of fact. . . . We review the findings to determine whether they could legally and reasonably be found, thereby establishing that the trial court could reasonably have concluded as it did." (Internal quotation marks omitted.) *O'Connell* v. *O'Connell*, 101 Conn. App. 516, 521, 922 A.2d 293 (2007).

The defendant first argues that the court's July 17, 2017 order was not sufficiently clear and unambiguous. To support his contention, the defendant directs our attention to the court's suggestion that the defendant consider, "if this is an economic hardship to make a substantial lump sum payment for tuition, that he consult with the school and ask whether a payment plan would be possible for him to continue to pay that." The defendant, in essence, argues that the court's suggestion rendered the tuition payment order ambiguous. We disagree. The court clearly stated that "the defendant is obligated to pay 75 percent of the tuition that is past due from 2015 to 2016 and 2016 to 2017 and for the coming year of 2017 to 2018." The court's suggestion to the defendant regarding potential outside avenues to effectuate payment of his tuition obligation did not make unclear his financial responsibility for the arrearage created by his failure to pay his share of the children's private middle school tuition. Thus, we conclude that the court's July 17, 2017 order was sufficiently clear and unambiguous to support its February 5, 2018 finding of contempt.

The defendant's next three arguments are based on his contention that he was unable to pay for his children's tuition. He argues that, due to his inability to pay, his failure to comply with the court's order was not wilful, and, therefore, he could not be held in contempt. To constitute contempt, "a party's conduct must be wilful. . . . Noncompliance alone will not support a judgment of contempt. . . . [I]nability to pay is a defense to a contempt motion. However, the burden of proving inability to pay rests upon the obligor." (Internal quotation marks omitted.) *Marshall* v. *Marshall*, 151 Conn. App. 638, 650–51, 97 A.3d 1 (2014). The court found that the defendant's annual income was approximately $400,000 and that he did not meet his burden

of proving that he was unable to pay his court-ordered obligation.

We review the court's factual findings in the context of a motion for contempt to determine whether they are clearly erroneous. "A factual finding is clearly erroneous when it is not supported by any evidence in the record or when there is evidence to support it, but the reviewing court is left with the definite and firm conviction that a mistake has been made." (Internal quotation marks omitted.) *Dionne* v. *Dionne*, 115 Conn. App. 488, 494, 972 A.2d 791 (2009). During the October 23, 2017 hearing on the plaintiff's motion for contempt, the defendant called his accountant, Philip Ayoub, to testify as to his "actual disposable income" from his professional service corporation for the first six months of 2017. Ayoub explained that the defendant, as the sole shareholder of Dr. K Services, P.C., his medical practice, has two sources of income from that corporation, as he is paid a salary and also is entitled to the income from the profits of his medical practice. Ayoub testified that, from January to June, 2017, the defendant received W-2 wages of $105,573.06 and was entitled to receive approximately $95,000 from the profits of his medical practice. The testimony of the defendant's accountant provided a basis for the court's findings, and, thus, they were not clearly erroneous. Therefore, we conclude that the court did not abuse its discretion in finding the defendant in contempt.

The judgments are affirmed.

In this opinion the other judges concurred.

[1] In the trial court, The Pickel Law Firm, LLC, and Meyers Breiner & Kent, LLP, filed limited appearances on behalf of the defendant. The defendant is appearing as a self-represented party in this appeal.

[2] Specifically, the arbitrator's award stated in relevant part: "The issues of custody, access, child support, maintenance and cost of medical insurance for the minor children and unreimbursed medical expenses are reserved to the Connecticut Superior Court."

[3] Although the parties have three minor children together, all references to the children herein shall refer solely to the parties' twin daughters, whose private middle school tuition is the subject of this appeal.

[4] In *Kirwan* v. *Kirwan*, supra, 185 Conn. App. 718, the defendant challenged the trial court's child support orders and a subsequent remedial order that the court issued in response to a motion for contempt for nonpayment of child support that required the defendant to make a $91,000 lump sum payment to the plaintiff to satisfy a child support arrearage. This court rejected the defendant's claims. See id., 752 (affirming trial court's judgments).

[5] The arbitrator stated in relevant part: "To leave the plaintiff, who has no experience in a competitive workplace after thirteen years, with no assets, an alimony award of five years, which is unrelated to either the plaintiff's needs or the defendant's income, and responsibility for three children, one of whom has special needs, is more than unfair or onerous, it is unconscionable."

[6] The parties' parenting plan, executed on May 26, 2015, provides that they must consider, discuss and agree on major decisions concerning, inter alia, their children's education. Specifically, the parenting plan provides in relevant part: "Major decisions, which shall be defined as those key issues [affecting] the minor children's health [and] course of study . . . shall be considered, discussed, and agreed to by both parties. . . . The parties recognize that the joint custody provision herein imposes an affirmative obligation to confer and consult with each other and arrive at a consensus regarding major decisions concerning the health, education and welfare of the

minor children."

7 At the same time, the court also considered a motion for an order that the defendant had filed on August 10, 2017. In his motion, the defendant sought a court order that his children attend the public school in the Rye, New York, school district. The court denied the defendant's motion in its February 5, 2018 memorandum of decision. The defendant did not appeal the court's denial of this motion.

8 In addition to the defendant's claims challenging the substance of the court's decision, he sets forth several claims challenging the court's authority to rule on the issue of the children's private middle school tuition. He argues that (1) the court was bound by the findings of the arbitration award, (2) the court erred when it considered the issue of private middle school tuition because child support, maintenance, and unreimbursed medical expenses were the only issues reserved by the court, (3) the court erred in disturbing orders of the parenting plan, (4) the tuition was the subject of a motion for modification, and (5) the tuition was the subject of an automatic stay. These claims have no merit.

The crux of the defendant's first and second claims are that the children's tuition was not included within the child related financial issues that were reserved to the trial court. We disagree. The arbitration award indicated that "[t]he issues of custody, access, child support, maintenance and cost of medical insurance for minor children and unreimbursed medical expenses are reserved to the Connecticut Superior Court." Although the children's tuition was not explicitly listed as one of the issues reserved, the parties consistently treated the tuition as part of the child related financial issues to be addressed by the court. Next, the court did not disturb the orders of the parenting plan. Rather, the court found that the parenting plan did not apply. Moreover, in the defendant's motion for modification, which he filed on December 19, 2016, the defendant sought to modify his weekly child support obligation. The motion did not address the issue of the children's tuition. Lastly, nothing in the record indicates that there was an automatic stay in place regarding child support or the children's tuition. See *Schull* v. *Schull*, 163 Conn. App. 83, 99, 134 A.3d 686, cert. denied, 320 Conn. 930, 133 A.3d 461 (2016) (orders related to child support are not automatically stayed under Practice Book § 61-11 (c) pending the period of an appeal).

9 The defendant also claims that the court erred by denying his July 31, 2017 motion to reargue and his September 11, 2017 motion for articulation regarding the court's July 17, 2017 ruling. We consider these claims to be inadequately briefed and therefore decline to address them. "Claims are inadequately briefed when they are merely mentioned and not briefed beyond a bare assertion. . . . Claims are also inadequately briefed when they . . . consist of conclusory assertions . . . with no mention of relevant authority and minimal or no citations from the record . . . ." (Internal quotation marks omitted.) *Estate of Rock* v. *University of Connecticut*, 323 Conn. 26, 33, 144 A.3d 420 (2016).

10 On appeal, the defendant also claims that he was improperly precluded from presenting evidence of (1) a letter sent by his attorney to the plaintiff's attorney during settlement negotiations for the parenting plan, and (2) e-mail correspondence between himself and his attorney. He claims that this evidence exhibited his objection to the children's enrollment at Saints John and Paul School. With respect to the settlement negotiations, the defendant offered a letter from his attorney sent during negotiations for the parenting plan. The letter stated that it was for settlement purposes only. The general rule is that evidence of settlement negotiations is not admissible at trial. See *Jutkowitz* v. *Dept. of Health Services*, 220 Conn. 86, 97, 596 A.2d 374 (1991). Thus, the court properly excluded this evidence.

Moreover, with respect to the e-mails, the plaintiff objected to their admission on the basis of hearsay and pointed out that they were sent from the defendant to the defendant's attorney. The following colloquy took place between the court and the defendant:

"The Court: . . . I don't want you to inadvertently waive the attorney-client privilege.

"[The Defendant]: I understand.

"The Court: So, perhaps you can get in the gist of that through your own testimony too.

"[The Defendant]: Absolutely. So, just initially starting with the e-mail of 6/22/14. There's some question about whether or not I had objected prior to the children starting school in St. John and Paul. And it says, I have no idea where the children are currently living, etc. With regard to schooling next year, I have no idea which schools the children are going to."

From the record, it is not clear that the court precluded the defendant from presenting evidence of the e-mails. Rather, upon learning that he risked waiving his attorney-client privilege, the defendant did not offer the e-mails into evidence. However, even assuming that the court improperly excluded the defendant's evidence, the defendant has failed to demonstrate harm. See *Sullivan* v. *Metro-North Commuter Railroad Co.*, 292 Conn. 150, 158, 971 A.2d 676 (2009) ("[e]ven if a court has acted improperly in connection with the introduction of evidence, reversal of a judgment is not necessarily mandated because there must not only be an evidentiary [impropriety], there also must be harm" [internal quotation marks omitted]); see also *Lovetere* v. *Cole*, 118 Conn. App. 680, 682, 984 A.2d 1171 (2009) ("[i]n the absence of a showing that the [excluded] evidence would have affected the final result, its exclusion is harmless" [internal quotation marks omitted]). The defendant testified about the content of the e-mails. Thus, he has failed to show that admission of the e-mail correspondence would have affected the court's judgment.

[11] General Statutes § 46b–81 (c) provides in relevant part: "In fixing the nature and value of the property, if any, to be assigned, the court, after considering all the evidence presented by each party, shall consider the . . . liabilities and needs of each of the parties . . . ."

[12] Typically, division of marital assets and liabilities occur at the time the court renders the dissolution judgment. Recent appellate case law, however, illustrates some degree of flexibility in deviating from this historical practice. See *Reinke* v. *Sing*, 328 Conn. 376, 393, 179 A.3d 769 (2018) (concluding that trial court had statutory authority to entertain and determine plaintiff's claim seeking modification of dissolution judgment where parties submitted issue to court, postdissolution, by agreement). Before *Reinke*, in *Smith* v. *Smith*, 249 Conn. 265, 274–76, 752 A.2d 1023 (1999), our Supreme Court, citing its "policy favoring finality of lump sum alimony and property awards," concluded that a trial court no longer retained jurisdiction, after a dissolution judgment, to divide a party's interest in a family trust if the party was found, in the future, to hold such an interest. We recognize that *Smith*, in addition to being factually distinguishable from the present case, is no longer good law to the extent that it is inconsistent with the court's recent decision in *Reinke*.

We view the present case, where the parties agreed, at the time of their dissolution, to defer resolution of their child related financial issues, as a logical extension of *Reinke*, where the parties agreed, postdissolution, to modify the division of their property. The present case, however, unlike *Reinke*, does not involve the redistribution of assets and did not require the court to open the judgment of dissolution. Thus, the court here did not need to be presented with a postdissolution agreement of the parties in order to effectuate the division of their marital liability because the parties specifically agreed, at the time of the dissolution, to reserve adjudication of child related financial issues. We therefore see no legal impediment to the court's authority to allocate the marital tuition debt for the 2015–2016 academic year.

[13] The defendant also argues that the court improperly granted the plaintiff's motion for contempt because it failed to comply with the requirements of Practice Book § 25-27. This argument was not made before the trial court, and, therefore, we decline to review it for the first time on appeal. See *Histen* v. *Histen*, 98 Conn. App. 729, 737, 911 A.2d 348 (2006) ("[W]e will not decide an appeal on an issue that was not raised before the trial court. . . . To review claims articulated for the first time on appeal and not raised before the trial court would be nothing more than a trial by ambuscade of the trial judge." [Internal quotation marks omitted.]).

In addition, with respect to the court's award of attorney's fees, the defendant argues that "[b]ecause of the errors of the court . . . [he] is not in contempt and . . . should not be liable for plaintiff's fees." His argument that the court improperly awarded attorney's fees necessarily depends on a determination that the court abused its discretion when it found him in contempt. Because we conclude that the court did not abuse its discretion in finding the defendant in contempt, we also conclude that the court did not abuse its discretion when it awarded attorney's fees under § 46b-87. See *Allen* v. *Allen*, 134 Conn. App. 486, 502–503, 39 A.3d 1190 (2012) ("Our law for awarding attorney's fees in contempt proceedings is clear. [Section] 46b-87 provides that the court may award attorney's fees to the prevailing party in a contempt proceeding. The award of attorney's fees in contempt proceedings is within the discretion of the court." [Internal quotation marks omitted.]).

Lastly, the defendant argues that the court's order improperly prohibits

him from hiring counsel on appeal. The defendant's argument, in its entirety, states: "Not only does the defendant lack the financial ability to satisfy the orders of the court  . . .  and to engage counsel but in addition, should the defendant have funds, is prohibited from using them to [engage] counsel for his defense, as he would then be deemed in willful contempt of the current orders." This argument finds no support in the record. Neither the court's July 17, 2017 ruling on the plaintiff's motion for an order nor the court's February 5, 2018 finding of contempt provides a basis for the defendant's assertion that he would have been held in contempt if he had hired counsel to represent him on appeal. Accordingly, the defendant's argument fails.

---