******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

## CZESLAW LUKASIK *v.* KAROLINA KOPINSKA
## (AC 46578)

Moll, Westbrook and Bear, Js.

### *Syllabus*

The plaintiff father appealed from the judgment of the trial court, which had awarded him joint legal and physical custody of the parties' minor child, with respect to its award of child support. The plaintiff claimed, inter alia, that the court's child support award was arbitrary and not in accordance with the state child support guidelines (§ 46b-215a-1 et seq.) because the court's application of the deviation criteria set forth in the applicable state regulation (§ 46b-215a-5c (b)) was improper. *Held*:

The trial court improperly deviated from the child support guidelines in its award of child support, as it failed to provide an explanation as to why the presumptive amount of child support as determined under the guidelines was inequitable or inappropriate and why a deviation was necessary to meet the needs of the minor child, and, accordingly, the judgment was reversed with respect to the child support order and the case was remanded for further proceedings.

The trial court improperly deviated from the child support guidelines on the basis of the coordination of total family support criterion in § 46b-215a-5c (b) because, in the present case, the parties were never married, and, accordingly, there was no alimony or division of property addressed in the court's decision.

The trial court improperly used the best interest of the minor child and the disparity of the parties' incomes as bases for its deviation from the presumptive amount of child support in the child support guidelines, as it failed to provide any reasons why a deviation on these bases was necessary to meet the needs of the minor child.

Argued September 19, 2024—officially released March 11, 2025

### *Procedural History*

Application for custody of the parties' minor child, and for other relief, brought to the Superior Court in the judicial district of Danbury and tried to the court, *Hon. Heidi G. Winslow*, judge trial referee; judgment granting joint legal and physical custody of the minor child to the parties and issuing certain orders, from which the plaintiff appealed to this court. *Reversed in part*; *further proceedings*.

*Alexander Copp*, with whom was *Neil R. Marcus*, for the appellant (plaintiff).

*Christopher P. Norris*, for the appellee (defendant).

*Opinion*

BEAR, J. The plaintiff, Czeslaw Lukasik, appeals from the judgment rendered by the trial court in this child custody action filed against the defendant, Karolina Kopinska. On appeal, the plaintiff claims that (1) the court abused its discretion by failing to make a specific finding of the presumptive child support amount before applying the deviation criteria, and (2) its child support award of $600 per week was arbitrary and not in accordance with the child support guidelines (guidelines). We agree with the plaintiff's second claim and conclude that the court improperly deviated from the guidelines. Accordingly, we reverse the judgment with respect to the order of child support and remand the case for further proceedings on that issue. We affirm the judgment in all other respects.

The following facts and procedural history are necessary for our resolution of the plaintiff's appeal. The plaintiff and the defendant, who never were married, became parents to a son in December, 2015. After living together for several years, the plaintiff filed the present action seeking joint legal custody of the parties' child on January 19, 2022.[1] He requested that the primary residence of the child be with him and sought an order

---

[1] In his child custody application, the plaintiff identified Connecticut as the home state of the child at the time of the filing of the child custody action and further indicated that the child had lived in Connecticut for the past six months, that the child and at least one parent had a significant connection to Connecticut, that there was substantial evidence in Connecticut concerning the child's present or future care, protection, training, and personal relationships, that no other state had an interest in this case, and that it was in the best interest of the child for a Connecticut court to hear the case. The court subsequently found these statements to be true.

regarding a parental physical access schedule and visitation. The plaintiff also sought a parenting responsibility plan for the parental decision-making regarding the child and an order of child support. On the same day, the plaintiff filed an application for an emergency ex parte order of custody, in which he requested an order directing the defendant not to remove the child from Connecticut. In his affidavit in support of the application, the plaintiff averred that the defendant had planned to take the child to live in her studio apartment in New York City and also "threatened to take the . . . child to Florida." The plaintiff further averred: "The [defendant] keeps threatening to take my son away from me and I believe she and her mother are making plans to take him against his and my will, so I am afraid to say anything to her." The court denied the plaintiff's application for an emergency ex parte order of custody. The parties subsequently agreed that the child would continue to reside in Brookfield until they reached an additional written agreement or any change by order of the court. The parties' agreement was approved and made an order of the court on February 14, 2022.

The court, *Hon. Heidi G. Winslow*, judge trial referee, held a trial on May 25, 2023, to resolve the issues of custody and child support. At this proceeding, both parties testified. Additionally, each party submitted two worksheets regarding child support. The plaintiff stated that he owned and managed various properties. He further testified that he had purchased a house in Brookfield that he offered as a residence to the defendant rent free for one year, so that the child could remain in the same school and community. The plaintiff claimed that, if he were to rent this property, which he owned outright, he would receive $2500 per month. The defendant testified that she did not accept this offer due to her concerns about the plaintiff setting up surveillance cameras and the resulting lack of privacy.

Following the presentation of evidence, the court issued an oral decision. At the outset, it noted that the parties had lived together for seven years, including for eighteen months following the commencement of the child custody action. The court ordered that the parties would have joint legal custody of the child and that the defendant would have the "final say . . . in the areas of medical, dental, and health issues." It further ordered the parties to share physical custody[2] of the child as follows: "The plaintiff will have physical custody of the child every Thursday, Friday, and Saturday. . . . The defendant will have physical custody of the child every Sunday, Monday, and Tuesday. The parties will alternate Wednesdays with the drop-off at school and the pickup from school." It further stated that the child would continue to attend school in Brookfield until such a time that neither parent lived there or further order of the court.

As to the matter of child support, the court ordered the plaintiff to pay $600 per week, which constituted a deviation from the guidelines. This deviation was based on the coordination of total family resources, the best interest of the child, and the extraordinary disparity between the parties' incomes. Payment of child support was to commence the following day.[3] This appeal followed. Additional facts will be set forth as necessary.

On appeal, the plaintiff claims that the court abused its discretion by failing to make a specific finding of the presumptive support amount[4] before applying the

---

[2] Section 46b-215a-1 (23) of the Regulations of Connecticut State Agencies provides: " 'Shared physical custody' means a situation in which the physical residence of the child is shared by the parents in a manner that ensures the child has substantially equal time and contact with both parents. An exactly equal sharing of physical care and control of the child is not required for a finding of shared physical custody."

[3] On July 19, 2023, the court noted that it had reviewed the judgment file drafted by the clerk and determined it to be correct as ordered.

[4] Section 46b-215a-1 (21) of the Regulations of Connecticut State Agencies provides: " 'Presumptive support amounts' means the child support award

deviation criteria[5] and that its child support award of $600 per week was arbitrary and not in accordance with the guidelines. With respect to the former, he specifically contends that the "court never made a finding regarding the presumptive amount; it merely recited the gross incomes of the parties as set forth on the plaintiff's worksheet." As to the latter, the plaintiff argues, inter alia,[6] that the court improperly based its support award on his offer to provide housing to the defendant for a period of one year, improperly applied the deviation criteria, and failed to support this deviation on the basis of the needs of the child. The defendant counters that the court indicated that it was relying on a specific guidelines worksheet, which contained the net income of the parties and, therefore, the "record is clear as to which guidelines the court was utilizing."[7]

components calculated under sections 46b-215a-2c and 46b-215-3a of the Regulations of Connecticut State Agencies, prior to consideration of the deviation criteria specific in section 46b-215a-5c of the Regulations of Connecticut State Agencies."

[5] Section 46b-215a-1 (10) of the Regulations of Connecticut State Agencies provides: " 'Deviation criteria' means those facts or circumstances specified in section 46b-215a-5c of the Regulations of Connecticut State Agencies, which may justify an order different from the presumptive support amounts."

[6] The plaintiff further contends that the court improperly awarded child support that was "grossly excessive," failed to impute income to the defendant, and failed to calculate her earning capacity. The defendant counters that the record is inadequate to reach the issue of earning capacity, as the plaintiff failed to seek an articulation with respect to that issue. On the basis of our resolution of this appeal, we need not address the parties' arguments regarding these issues.

[7] The defendant asserts that this appeal should be "dismissed" because the plaintiff failed to raise the issues presented in his appellate brief to the trial court in a postjudgment motion. We disagree. Putting aside that dismissal would be not the appropriate procedural outcome for such a failure, in his proposed orders, the plaintiff requested that he pay child support in accordance with the guidelines, whereas the defendant sought any amount of support from the plaintiff that constituted an upward deviation from the guidelines. Moreover, the parties submitted guidelines worksheets listing varying amounts of support. We disagree, therefore, with the defendant's contention that the plaintiff raised the issue of the determination of the child support for the first time on appeal.

She further disagrees with the plaintiff's arguments regarding the basis and amount of the deviation. We agree with the plaintiff that the court's award of child support that deviated from the presumptive amount was improper.

"As a preliminary matter, we note the well settled standard of review applicable in domestic relations cases. [T]his court will not disturb trial court orders unless the trial court has abused its legal discretion or its findings have no reasonable basis in the facts. . . . [T]he foundation for this standard is that the trial court is in a clearly advantageous position to assess the personal factors significant to a domestic relations case. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . *With respect to child support, however, the parameters of the court's discretion have been somewhat limited by the factors set forth in the child support guidelines*." (Citation omitted; emphasis added; internal quotation marks omitted.) *Battistotti* v. *Suzanne A.*, 182 Conn. App. 40, 44, 188 A.3d 798, cert. denied, 330 Conn. 904, 191 A.3d 1000 (2018); see also *Pencheva-Hasse* v. *Hasse*, 221 Conn. App. 113, 121–22, 300 A.3d 1175 (2023); *Gentile* v. *Carneiro*, 107 Conn. App. 630, 636, 946 A.2d 871 (2008). "The question of whether, and to what extent, the child support guidelines apply, however, is a question of law over which this court . . . exercise[s] plenary review." (Internal quotation marks omitted.) *Dowling* v. *Szymczak*, 309 Conn. 390, 399, 72 A.3d 1 (2013).

The following additional facts are necessary for the resolution of this appeal. As a precursor to its consideration of the issue of child support, the court expressed its concern regarding "controlling behaviors by [the plaintiff]. He has a hard time convincing me that placing cameras throughout the house is anything other than

a controlling behavior as to [the defendant]. Trying to set up her home in the near vicinity that he owns is on the one hand generous, on the other hand controlling." It then stated: "So, what will happen is that the court, when I get to the parenting schedule of this, will be deviating from the child support guidelines so that, instead of providing a home that's worth whatever—$2600 a month—[the plaintiff] will provide the equivalent of that in child support so that [the defendant] can find a place of her own to live in a comparable price. He can then happily rent out that house and make up that loss so all will be satisfactory."

The court subsequently explained: "The plaintiff has a house in Brookfield [that is] apparently in move-in condition at this point that could be rented at [$2500], $2600 a month, which is sitting there to accommodate his desire to have the defendant move into that house. She may still choose to do so and pay him $2600 a month—whatever—but she deserves the independent decision-making on that . . . ."

The court then ordered the plaintiff to pay $600 per week to the defendant as child support. It further observed that this award constituted a "clear deviation from the guidelines" and was the equivalent of $2600 per month. It then stated: "The court believes that . . . the guidelines reflect the incomes as reported by the parties, today—and I'm referring to the guidelines submitted by the plaintiff in this action, which place the obligation of the plaintiff at $221 per week and that of the defendant at $66 per week." The court noted that the parties appeared to minimize their current income and resources on their financial affidavits. It continued as follows: "However, for the purposes of these proceedings, I'm accepting the numbers that I stated as far as the guidelines are concerned, and those are the income numbers that will prevail for purposes of future

examination of child support should it become necessary to reexamine her income of $400 a week and his income of $1759 per week. *The deviation is based on the coordination of the total family resources as well as the best interests of the parties' child and the extraordinary disparity between the parties' incomes.*"[8] (Emphasis added.)

We begin our analysis with the observation that "[t]he fundamental purpose of child support . . . is to provide for the care and well-being of minor children . . . ." (Internal quotation marks omitted.) *Blondeau* v. *Baltierra*, 337 Conn. 127, 172, 252 A.3d 317 (2020); see also *Tomlinson* v. *Tomlinson*, 305 Conn. 539, 555, 46 A.3d 112 (2012); *LeSueur* v. *LeSueur*, 186 Conn. App. 431, 464, 199 A.3d 1082 (2018). Connecticut courts have been cautioned to avoid wealth transfers or disguised alimony when awarding child support. *Flood* v. *Flood*, 199 Conn. App. 67, 85, 234 A.3d 1076, cert. denied, 335 Conn. 960, 239 A.3d 317 (2020).

Next, we turn to the child support guidelines, which are based on an income share model, which requires an accurate and complete determination of the parties' respective incomes. *Kirwan* v. *Kirwan*, 185 Conn. App. 713, 729, 197 A.3d 1000 (2018). "We begin with the child support guidelines; Regs., Conn. State Agencies § 46b-215a-1 et seq.; and our case law interpreting the guidelines. . . . General Statutes § 46b-215a provides for a commission to oversee the establishment of child support guidelines, which must be updated every four years, to ensure the appropriateness of criteria for the

---

[8] We note that the court, in its oral decision, did not specifically find that applying the presumptive amount of child support would be inequitable or inappropriate under the circumstances. See, e.g., *Tuckman* v. *Tuckman*, 308 Conn. 194, 208, 61 A.3d 449 (2013); *Moore* v. *Moore*, 216 Conn. App. 179, 193–96, 283 A.3d 994 (2022); *Righi* v. *Righi*, 172 Conn. App. 427, 434–41, 160 A.3d 1094 (2017). The judgment file, which the court subsequently reviewed and signed, did explicitly contain this necessary finding.

establishment of child support awards. General Statutes § 46b-215b provides in relevant part: (a) The . . . guidelines issued pursuant to section 46b-215a . . . and in effect on the date of the support determination shall be considered in all determinations of child support award amounts . . . . In all such determinations, there shall be a rebuttable presumption that the amount of such awards which resulted from the application of such guidelines is the amount to be ordered. A specific finding on the record at a hearing, or in a written judgment, order or memorandum of decision of the court, that the application of the guidelines would be inequitable or inappropriate in a particular case, as determined under the deviation criteria established by the Commission for Child Support Guidelines under section 46b-215a, shall be required in order to rebut the presumption in such case. . . .

"The guidelines consist of the rules, schedule and worksheet established under [the applicable sections] of the Regulations of Connecticut State Agencies for the determination of an appropriate child support award . . . . Regs., Conn. State Agencies § 46b-215a-1 (5). The guidelines are accompanied by a preamble that is not part of the regulations but is intended to assist in their interpretation. See Child Support and Arrearage Guidelines (2015), preamble. The preamble states that the primary purpose of the guidelines is [t]o provide uniform procedures for establishing an adequate level of support for children . . . and [t]o make awards more equitable by ensuring the consistent treatment of persons in similar circumstances. . . .

"Moreover, [§] 46b-215a-5c (a) of the Regulations of Connecticut State Agencies provides in relevant part: The current support . . . contribution amounts calculated under [the child support guidelines] . . . are presumed to be the correct amounts to be ordered. The

presumption regarding each such amount may be rebutted by a specific finding on the record that such amount would be inequitable or inappropriate in a particular case. . . . Any such finding shall state the amount that would have been required under such sections and include a factual finding to justify the variance. Only the deviation criteria stated in . . . subdivisions (1) to (6), inclusive, of subsection (b) of this section . . . shall establish sufficient bases for such findings.

"Our courts have interpreted this statutory and regulatory language as requiring three distinct findings in order for a court to properly deviate from the child support guidelines in fashioning a child support order: (1) a finding of the presumptive child support amount pursuant to the guidelines; (2) a specific finding that application of such guidelines would be inequitable and inappropriate; and (3) an explanation as to which deviation criteria the court is relying on to justify the deviation." (Citations omitted; emphasis omitted; footnote omitted; internal quotation marks omitted.) *Renstrup* v. *Renstrup*, 217 Conn. App. 252, 260–62, 287 A.3d 1095, cert. denied, 346 Conn. 915, 290 A.3d 374 (2023); see also *Tuckman* v. *Tuckman*, 308 Conn. 194, 205–207, 61 A.3d 449 (2013); *Becue* v. *Becue*, 185 Conn. App. 812, 844–45, 198 A.3d 601 (2018), cert. denied, 331 Conn. 902, 201 A.3d 403 (2019).

In the present case, the court determined the presumptive amount of child support to be $221 per week, payable by the plaintiff to the defendant.[9] This determination was based on a child support guidelines worksheet filed by the plaintiff on May 25, 2023, that listed

[9] "The Supreme Court has determined that stating [this finding] on the record will facilitate appellate review. *Favrow* v. *Vargas*, [supra, 231 Conn. 29]." *Tracey* v. *Tracey*, 97 Conn. App. 122, 126–27, 902 A.2d 729 (2006). "In other words, the finding will enable an appellate court to compare the ultimate order with the guideline amount and make a more informed decision on a claim that the amount of the deviation, rather than the fact of a deviation, constituted an abuse of discretion." (Internal quotation marks omitted.) *O'Brien* v. *O'Brien*, 138 Conn. App. 544, 550, 53 A.3d 1039, cert. denied, 308

the defendant's gross weekly income at $400 and her net weekly income at $362. The plaintiff's gross weekly income was listed at $1759 and his net weekly income at $1193. The parties' total net weekly income was listed at $1555, with the defendant's share as 23 percent and the plaintiff's as 77 percent. This worksheet provided that the defendant's share of the basic child support obligation was $66 per week, and the plaintiff's was $221. Section 46b-215a-2c (c) (7) (B) of the Regulations of Connecticut State Agencies provides in relevant part: "In a shared physical custody situation, as defined in section 46b-215a-1 (23) of the Regulations of Connecticut State Agencies, the presumptive current support order shall equal the presumptive current support amount of the parent with the higher net weekly income, payable to the parent with the lower net weekly income. . . ." The court's child support award, however, deviated from the presumptive amount. Specifically, the court ordered the plaintiff to pay the defendant $600 per week, which was "clearly a deviation from the guidelines."

The judgment file prepared by the clerk, which the court subsequently approved on July 19, 2023, noting that it has been "[r]eviewed and determined to be correct as ordered," did not include the presumptive amount of child support. This document simply stated that a deviation was ordered and articulated the following reasons for such an award: "The plaintiff will pay $600 per week to the defendant for child support. Wage withholding shall apply. This deviation from the child support guidelines is because of the disparity in the parties' incomes, the additional income resources available to the plaintiff and the coordination of total family resources. It would be inappropriate and inequitable NOT to deviate from the guidelines in this case. The

Conn. 937, 66 A.3d 500 (2012); see also *K. S.* v. *R. S.*, 350 Conn. 692, 735–36, 326 A.3d 187 (2024).

child support payments are to commence on [May 26, 2023]."

The plaintiff contends that the court's child support award of $600 per week was arbitrary and not in accordance with the guidelines. Specifically, he argues, inter alia, the court improperly applied the deviation criteria and failed to justify the deviation based on the needs of the child. We agree.

At the outset, we note that, "[n]otwithstanding the great deference accorded the trial court in [child custody] proceedings, a trial court's ruling . . . may be reversed if . . . the trial court applies the wrong standard of law. . . . The question of whether, and to what extent, the child support guidelines apply . . . is a question of law over which this court should exercise plenary review." (Internal quotation marks omitted.) *Wald* v. *Cortland-Wald*, 226 Conn. App. 752, 761, 319 A.3d 769 (2024).

We iterate that all child support awards must be made in accordance with the principles established in the relevant statutes and guidelines to ensure that such awards promote equity, uniformity, and consistency for children at all income levels. *Tuckman* v. *Tuckman*, supra, 308 Conn. 206; *Deshpande* v. *Deshpande*, 142 Conn. App. 471, 477–78, 65 A.3d 12 (2013). Additionally, the support amount calculated under the guidelines is presumed to be the correct amount to be ordered. *Renstrup* v. *Renstrup*, supra, 217 Conn. App. 262; see also Regs., Conn. State Agencies § 46b-215a-5c (a). This presumption may be rebutted by a specific finding on the record that such amount would be inappropriate or inequitable in a particular case. *Renstrup* v. *Renstrup*, supra, 262. "Only the deviation criteria . . . shall establish sufficient bases for such findings." (Internal quotation marks omitted.) Id.; see also *Pencheva-Hasse* v. *Hasse*, supra, 221 Conn. App. 123.

"The criteria enumerated in § 46b-215a-5c (b) of the regulations are: (1) Other financial resources available to a parent . . . (2) [e]xtraordinary expenses for care and maintenance of the child . . . (3) [e]xtraordinary parental expenses . . . (4) [n]eeds of a parent's other dependents . . . (5) [c]oordination of total family support . . . [and] (6) [s]pecial circumstances . . . ." (Internal quotation marks omitted.) *Renstrup* v. *Renstrup*, supra, 217 Conn. App. 262 n.7; see also *Y. H.* v. *J. B.*, 224 Conn. App. 793, 803, 313 A.3d 1245 (2024); *Becue* v. *Becue*, supra, 185 Conn. App. 845. We are mindful that "[o]ur Supreme Court has instructed that [t]he deviation criteria are narrowly defined and require the court to make a finding on the record as to why the guidelines are inequitable or inappropriate." (Internal quotation marks omitted.) *Kavanah* v. *Kavanah*, 142 Conn. App. 775, 781, 66 A.3d 922 (2013).

The court first explained that its deviation was based on the coordination of the total family support criterion. Section 46b-215a-5c (b) (5) of the Regulations of Connecticut State Agencies provides in relevant part: "In some cases, child support is considered in conjunction with a determination of total family support, property settlement, and tax implications. When such consideration will not result in a lesser economic benefit to the child, it may be appropriate to deviate from the presumptive support amounts for the following reasons only: (A) division of assets and liabilities, (B) provision of alimony, and (C) tax planning considerations."

In the present case, however, the parties never were married. Accordingly, there was no alimony or division of property addressed in either the court's oral decision or the written judgment file. Furthermore, there was no evidence or discussion of tax considerations, aside from which party would claim the dependency tax

exemption.[10] We conclude, therefore, that the court improperly deviated from the guidelines on the basis of the coordination of total family support criterion.

The court next stated that the deviation was based on the extraordinary disparity between the parties' incomes. Section 46b-215a-5c (b) (6) of the Regulations of Connecticut State Agencies provides in relevant part: "In some cases, there may be special circumstances not otherwise addressed in this section in which deviation from presumptive support amounts may be warranted for reasons of equity. Such circumstances are limited to the following . . . (B) When the custodial parent has high income, resulting in an extraordinary disparity between the parents' net incomes, it may be appropriate to deviate from presumptive support amounts if: (i) such deviation would enhance the lower income parent's ability to foster a relationship with the child; and (ii) sufficient funds remain for the parent receiving support to meet the basic needs of the child after deviation."

In *Zheng* v. *Xia*, 204 Conn. App. 302, 253 A.3d 69 (2021), the trial court ordered the plaintiff to pay 13 percent of his net bonus income as additional child support annually. Id., 312. The trial court noted that this constituted a deviation from the guidelines on the basis of the coordination of total family support and significant disparity in the parties' incomes, but aside from the allusion to this disparity, failed to include specific findings as to why the guidelines amount would be inequitable and inappropriate. Id. We concluded that the trial court's award was improper, stating: "That reason to deviate from the child support guidelines, i.e., disparity between the incomes of the parties, fails as a matter of law. Our Supreme Court has stated that

---

[10] The court ordered the parties to claim the dependency tax exemption in alternate years.

[i]ncome disparity may be considered . . . only when the custodial parent has the higher income and deviation from the presumptive support amount would enhance the lower income [noncustodial] parent's ability to foster a relationship with the child . . . . This consideration is unambiguously intended to protect the noncustodial parent in circumstances where the income of the custodial parent far exceeds the income of the parent obligated to pay child support . . . ." (Emphasis omitted; internal quotation marks omitted.) Id. This is not the situation in the present case, as the parties share custody of the child on an equal basis. Further, there was no evidence that this deviation from the guidelines would enhance the defendant's ability to foster a relationship with the child. The court, therefore, improperly considered the disparity between the parties' incomes when it ordered the plaintiff to pay $600 per week as child support. See id.

Finally, the court in the present case stated that the deviation from the presumptive amount of child support as determined by the guidelines was based on the best interest of the child. We agree with the plaintiff that the court failed to explain why a deviation on this basis was necessary to meet the needs of the child. See *Maturo* v. *Maturo*, 296 Conn. 80, 95–96, 995 A.2d 1 (2010); *Ray* v. *Ray*, 177 Conn. App. 544, 567, 173 A.3d 464 (2017); *Chowdhury* v. *Masiat*, 161 Conn. App. 314, 323, 128 A.3d 545 (2015). Accordingly, the court improperly used the best interest of the child as a basis to deviate from the presumptive amount of support.

The plaintiff further argues that, "[i]n the present matter, there was no evidence as to the needs and expenses of the minor child, and, in any event, the trial court failed to tie the deviation criteria to those needs. There was no testimony from the defendant regarding her care and the expenses of the child warranting a higher support order based on the needs of the child."

We agree. The court failed to provide any reasons for why a deviation from the presumptive amount of child support was appropriate. See *Chowdhury* v. *Masiat*, supra, 161 Conn. App. 323. Rather, the court merely mentioned various criteria as its basis for doing so. As we recently explained, merely citing a specific criterion as a reason for deviation from the guidelines and failing to make a specific finding to justify such an action is improper. *Wald* v. *Cortland-Wald*, supra, 226 Conn. App. 767–68. "Without the specific findings that would support a deviation based on the shared physical custody of the minor child, it is impossible to ascertain how the court determined that application of the child support guidelines was inequitable and inappropriate due to this criterion." Id., 768. Stated differently, "[a]ny deviation from the schedule or the principles on which the guidelines are based must be accompanied by the court's explanation as to why the guidelines are inequitable or inappropriate and why the deviation is necessary to meet the needs of the child." (Internal quotation marks omitted.) *Kirwan* v. *Kirwan*, supra, 185 Conn. App. 744; see also *Zheng* v. *Xia*, supra, 204 Conn. App. 311 (any deviation must be accompanied by court's explanation as to why guidelines are inequitable or inappropriate and why deviation is necessary to meet needs of child); *Ross* v. *Ross*, 200 Conn. App. 720, 733, 239 A.3d 1280 (2020) (court must explain how application of deviation criteria justifies variance); *Fox* v. *Fox*, 152 Conn. App. 611, 639–40, 99 A.3d 1206 (same), cert. denied, 314 Conn. 945, 103 A.3d 977 (2014); see generally *Barcelo* v. *Barcelo*, 158 Conn. App. 201, 216–17, 118 A.3d 657, cert. denied, 319 Conn. 910, 123 A.3d 882 (2015).

Here, the court failed to provide an explanation as to why the presumptive amount of child support as determined under the guidelines was inequitable or inappropriate and why a deviation was necessary to meet the needs of the child. In awarding weekly support

of $600, the court appeared to have been concerned with providing a solution to the plaintiff's "controlling behaviors" with regard to the defendant and her housing situation.[11] The use of child support constitutes an improper remedy for those issues. Accordingly, we conclude that the judgment must be reversed only with respect to the child support order and the case must be remanded for a new hearing on that issue.

The judgment is reversed only as to the child support order and the case is remanded for further proceedings on that issue; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

––––––––––––––––––––––––

[11] Specifically, the court stated: "So, what will happen is that the court, when I get to the parenting schedule of this, will be deviating from the child support guidelines so that, instead of providing a home that's worth whatever—$2600 a month—[the plaintiff] will provide the equivalent of that in child support so that [the defendant] can find a place of her own to live in a comparable price. He can then happily rent out that house and make up that loss so all will be satisfactory."

It is unclear whether the court considered whether the $2600 per month constituted gross or net rental income. See, e.g., *Kirwan* v. *Kirwan*, supra, 185 Conn. App. 738–41 (child support guidelines worksheet and calculation of presumptive amount of support use net income).